### No. 37,490

VIRGINIA LEE AKINS, *Appellee*, v. ILLINOIS BANKERS LIFE ASSURANCE COMPANY, *Appellant.*

(203 P. 2d 180)

Opinion
filed March 5, 1949.

*P. E. Nulton,* of Pittsburg, argued the cause, and *R. L. Letton,* of Pittsburg, was with him on the briefs for the appellant.

*Charles W. Hill,* of Pittsburg, argued the cause, and *Simeon Webb,* of Pittsburg, was with him on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, J.: This was an action to recover death benefits under an accident insurance policy. The case was tried by the court. Judgment was for the plaintiff and the defendant appeals, assigning error in rendition of the judgment under the law and the evidence, allowance of attorney fees as part of the costs and the overruling of its motion for a new trial.

The pleadings are not in controversy and for our purpose can be briefly summarized.

In substance the petition states that while plaintiff's husband, Jack A. Akins, was insured under an accident and health insurance policy issued by defendant, the terms of which designated her as sole beneficiary and provided that in event of his death "effected directly and independently of all other causes through accidental means" the company would pay her as beneficiary the sum of $1,000, he met death by external and accidental means by gunshot wounds with the result the company is now liable to her for the amount it agreed to pay if loss occurred under the terms of such policy.

Defendant's answer admits issuance of the insurance contract and death of the insured in form and manner as stated in the petition but denies liability, alleging his death was not effected through accidental means under the terms and provisions of the policy but was caused by and on account of his deliberately and voluntarily assaulting the plaintiff and voluntarily and deliberately engaging in a fight or encounter with her, in which fight, encounter and assault he was the aggressor, and on account of which plaintiff shot and killed him in self defense.

When the cause came on for hearing upon issues raised by the foregoing pleading the parties waived a jury and consented to a

trial by the court. They then announced the filing of a stipulation whereby they had agreed that the transcript of the testimony of Virginia Akins in the case of *State of Kansas v. Virginia Akins,* in the district court of Crawford county, Kansas, a criminal proceeding which, we pause to note, is conceded by all parties to have been a prosecution wherein the plaintiff was tried on a charge of second degree murder and acquitted by a jury, be admitted as the testimony in the action together with the policy of insurance and that such testimony and policy was to be, and should be considered by the district court as, the entire evidence on which it was to base its judgment. In due time after reviewing the stipulated record the trial court rendered its judgment wherein it held generally in favor of plaintiff and against the defendant for the sum of $1,000 and allowed her attorneys the sum of $500 as a fee to be assessed as costs. As a part of its decree it made findings which were incorporated in the journal entry of judgment and read as follows:

". . . finds generally in favor of the plaintiff and against the defendant and that the decedent, Jack Akins, met his death at the hands of the plaintiff through misadventure in that she did not intentionally cause his demise and the same was undesigned, sudden and unexpected event and external and accidental in character, the said Jack Akins, immediately preceding his death, not being engaged in such conduct that a reasonable man could have anticipated death as a result and his demise was not the natural and probable consequence of his acts. . . ."

Following rendition of the judgment defendant filed a motion for new trial, which was overruled. It then perfected this appeal and now contends (1) that on the face of the record it is entitled to a directed judgment in its favor or (2) in the event that be denied the errors it assigns require the granting of a new trial.

Before giving consideration to facts and legal principles involved in a determination of the issues raised by this appeal it can be stated that under the terms of the instant policy we are not required to deal with provisions expressly limiting or relieving the insurer from liability for death of the insured while he was engaged in an assault, combat or fight, or other conduct of similar import. The parties agree the fundamental question, on which all other issues depend, is whether under the law and evidence the death of Jack A. Akins was effected directly and independently of all other causes through accidental means.

Generally speaking, "accidental means" signifies a happening by chance and without intention or design, which happening is unfore-

seen, unexpected and unusual at the time it occurs. (29 Am. Jur. 708, § 933; Vance on Insurance, 2d Ed. 869, § 258 [1].) However, the term as used in accident insurance policies is not susceptible of exact definition and usually its application depends upon the facts of each particular case (45 C. J. S. 778 § 753 [b]; 29 Am. Jur. 708 § 933).

Thus, at this point, a statement of the factual situation, which it must be remembered depends entirely upon the testimony of the appellee herself, is required. In making it we will make reference to material facts only and they will be summarized wherever possible.

Virginia Lee Akins and Jack A. Akins, the insured, were married on May 29, 1939, when she was sixteen years of age. By October 13, 1945, three children had been born to their union. About August, 1947, marital differences, for which it can be said it appears the husband was entirely responsible, arose between them and from that time on they had considerable trouble. In the fore part of August, 1947, and at a time when she was pregnant, the husband slapped his wife twice and blackened her eye. A few days later another family argument ensued during which he struck her in the face and stomach. As a result she suffered severe pains for two or three days. Later in the same month he assaulted and choked her and left the family home. The wife then consulted an attorney about securing a divorce. A few days later the husband returned and upon his promise of better conduct in the future there was a reconciliation.

On September 1, 1947, the insured and a neighbor engaged in target practice near the home with a shotgun and a revolver. When appellee called her husband in for lunch he brought the guns with him, placing the shotgun in the bedroom and putting the pistol in a dresser drawer in such room. When Mrs. Akins remonstrated with him about leaving the last-mentioned weapon in the dresser drawer because her small son might get it he stated that it would not hurt the boy if he did because he had used all the shells and such gun was not loaded.

During the late afternoon of the same day the husband and two of the children left the home for a park located in the vicinity to attend a Labor Day celebration. They returned late that afternoon. Mrs. Akins and the little girl met them as they drove into the yards. One of the returning children stated they had been at

the park with daddy's girl. Thereupon another argument ensued. Shortly thereafter Jack struck his wife and she picked up a pop bottle from a nearby sand pile. He took the pop bottle away from her and hit her over the head. They then engaged in a scuffle and he hit her on the forearm. She broke away and ran toward the house. As she did so her little boy said "run mamma, daddy is going to hit you again." She then ran into the back bedroom and as she looked out the window her little girl said "mamma, get out of the window, daddy will hit you again." As this statement was made the husband started toward the house and as he did so he stooped down and picked up a pop bottle and said "I will still get you." Mrs. Akins' version of just what happened immediately thereafter can best be ascertained by quoting from portions of her testimony. Certain questions and answers to be found in the record read:

Direct examination:

"Q. And you remembered this gun and picked it up from this dresser? A. Yes, sir.

"Q. What did you do? A. I grabbed it and I brought it around. I wanted to show him that I had something to defend myself with and it hit the screen and it went off.

"Q. Just how did you bring it around—how did you put the gun to the window? A. I just brought it around, brought my arm around.

"Q. As you picked up the gun you picked it up by this handle? A. Yes.

"Q. And in what condition were you at the time? A. I was scared, I was all worked up, nervous, he had hit me over the head.

"Q. Do you remember the gun striking the screen? A. No, it all happened so fast.

"Q. Had you ever shot a gun before? A. No, sir.

"Q. Did you know that the gun was loaded? A. No sir. He had told me it wasn't because I told him about the little boy, afraid he would get it, and he told me it wasn't.

"Q. What part of the gun struck the screen wire? A. The end of it.

"Q. The end of the barrel? A. Yes.

"Q. When it struck what occurred? A. Well, it went off."

Cross-examination:

"Q. Was there anything on the window? A. Yes, sir; screen there.

"Q. Were you afraid the pop bottle would come through the window? A. I didn't know whether it would or not.

"Q. What did you do at that time? A. That is when I thought of the gun, I grabbed the gun.

"Q. But you know the gun wasn't loaded—is that correct? A. He said it wasn't.

"Q. How was it going to help you as a weapon? A. Because I thought maybe I could hit him across the head with it if he got close enough.

"Q. Through the screen? A. He might have come to the back door. I just got it to show him I had it.

"Q. But he told you it wasn't loaded? A. Yes, sir."

We have not, as has been indicated, attempted to quote all testimony of this witness on the subject mentioned and it should perhaps be said some statements made by her on cross-examination were of such nature as to permit speculation on the question whether her relation of the existing factual situation is entirely accurate. At the same time, however, it should be stated that nothing in her testimony justifies a conclusion she ever repudiated her version thereof or in any manner conceded its inaccuracy, likewise pointed out that appellant makes no effort to here impeach her testimony or establish that statements made by her under oath as a witness are not entitled to credence.

Jack Akins, who was outside the house and in the yard at the time the revolver was fired by his wife, under the conditions and circumstances related by her, was struck and killed by the bullet ejected from such weapon.

Appellant's first argument is actually based upon the premise that where an insured is an aggressor in a fight or altercation or brings about an assault upon himself by his own wrongful act which results in his death from the encounter or his misconduct there is no liability under an accident insurance policy providing benefits for death through accidental means. In support of its position it directs our attention to statements appearing in two of our cases, *McCullough v. Liberty Life Ins. Co.*, 125 Kan. 324, 329, 264 Pac. 65, and *Broyles v. Order of United Commercial Travelers*, 155 Kan. 74, 78, 122 P. 2d 763, to the effect that if one person intentionally kills another without misconduct on the part of the latter and unforeseen by him death as to the latter is to be regarded as resulting from accidental means. We have examined those decisions in each of which recovery was allowed for death resulting under conditions where it was not even contended the persons insured had engaged in any controversy or been guilty of any misbehavior. Appellant construes such statements to mean that whenever an insured is killed while engaged in conduct of that character his death is not to be regarded as effected by accidental means. As applied to the factual situations there involved the rule announced in the foregoing cases is

proper. But we do not agree that in enunciating it this court intended that it should be given the construction placed upon it by appellant. Neither do we believe it was contemplated such rule should have application to or be decisive of the rights of parties under circumstances such as are here involved. Appellant also supports its position by decisions from foreign jurisdictions, not here cited because they can be found in later references. Conceding such cases uphold the doctrine on which appellant relies we do not recognize them as controlling in this jurisdiction.

The authorities, dealing with the question when recovery is authorized under a policy providing for death effected through accidental means, are legion. Even so we do not have time or space, nor are we disposed, to exhaust the field of or make specific reference to particular cases. It suffices to say that from our examination of the many authorities cited by the astute counsel for both parties, and others not referred to by them but nevertheless examined, we have concluded, in the absence of specific provisions in the contract limiting liability, the better rule is that if an insured is killed or injured in an encounter, fight or affray with another, his death or injury is caused by accidental means within a policy insuring against death "effected directly and independently of all other causes through accidental means," even though the insured is the aggressor, if it appears from the facts disclosed by the evidence in the case in question that he did not reasonably anticipate that his acts or course of action would result in death or bodily injury at the hands of his antagonist.

For legal treatises and digests recognizing and applying the foregoing doctrine and citing numerous decisions supporting it, and we may add also dealing with the more restricted rule relied on by appellant, see 45 C. J. S. 827 § 788; 1 Appleman on Insurance Law and Practice, 459 to 467 Incl. § 391; 6 Cooley's Briefs on Insurance, 2d ed. 5233 to 5249 § 22 (2); Vance on Insurance 2d ed. 877 § 258; Cornelius on Accidental Means (Proposition No. 11) 59; 29 Am. Jur. 736 § 980; 4 A. L. R. Anno. 723; 116 A. L. R. Anno. 396; 137 A. L. R. Anno. 1286; American Digest System (Insurance) §§ 455, 463.

No decisions are to be found in our reports dealing directly with liability of the insurer on an accident insurance policy where the insured's death resulted while he was engaging in an affray with a third person. Be that as it may, we believe *Spence v. Equitable*

*Life Assurance Soc.*, 146 Kan. 216, 69 P. 2d 713, holding an over-dose of barbital voluntarily taken by the assured in ignorance that the amount he was taking was a lethal dose, and which caused his death, was death by accidental means under a policy containing terms similar to the one here involved, upholds the doctrine just approved. To say the least, analogous reasoning, if such decision is to be followed as a precedent, compels the conclusion that, within the meaning of such a policy, a fatal injury received by an insured while engaging in a family quarrel or fight without having reason to expect such a consequence, would constitute death by accidental means.

The effect of the next contention urged against the judgment is that notwithstanding and irrespective of the rule heretofore held to be applicable in this jurisdiction the appellee failed to establish the death of the insured was effected by accidental means.

Appellant insists that since the only evidence is in transcript form this court is required to decide for itself what the facts establish, substantially in the same manner it would if this were an original case. We have so held. (*In re Estate of Kemper*, 157 Kan. 727, 145 P. 2d 103, and earlier cases therein cited, *In re Estate of Besse*, 163 Kan. 413, 183 P. 2d 414; *White v. Turner*, 164 Kan. 659, 192 P. 2d 200.) It must be remembered, however, the rule is subject to some elasticity under certain conditions. In *Bolin v. Johnson County Nat'l Bank*, 160 Kan. 61, 159 P. 2d 477, we said:

". . . For us to disregard entirely the question of bad faith and hold, as a matter of law, that the plaintiffs' efforts procured the sale, would require us also to disregard wholly the deposition of one witness and accept as true the testimony given in the depositions of other witnesses. Under such circumstances unless the trial court's findings of fact, even though based solely on depositions and exhibits, is illogical, improbable and unwarranted, we are inclined to follow the ordinary rule giving credence where the trial court gave credence. In this case such evidence would warrant either of two directly contrary findings of fact. Even though we might be inclined to disagree with the trial court, nevertheless, it cannot be said, as a matter of law, that the trial court was not justified in making its finding of fact. There was adequate evidence to support it. The plaintiffs do not contend that the notice terminating the agency was in itself unreasonable and consequently we would not be justified in ignoring its legal consequence." (p. 65.)

To the same effect is *Shriver v. Besse*, 163 Kan. 402, 183 P. 2d 407, where the following statement appears:

"From the manner in which this case reaches us, we determine the facts from the printed page. We have not seen the witnesses. We cannot be unmindful, however, that the witnesses were all personally present in the probate court, and the court concluded that the antenuptial contract was obtained by fraud." (p. 412.)

We feel compelled to add that in the instant case, where the testimony of the appellee as the only witness is admitted and unimpeached and where the trial judge making the findings to which we have heretofore referred had an opportunity to observe the attitude and demeanor of such witness even though it was in a former trial in a criminal action, there is all the more reason for following the qualifying rule announced in the decisions from which we have just quoted.

Having established the legal principles on which our decision must be based and carefully reviewed the only evidence available we have little difficulty in deciding the trial court's findings, to the effect the insured met his death at the hands of the appellee at a time when, even though he was engaged in an affray with her, he was not engaged in such conduct that a reasonable man could have anticipated death as a result and his demise was not the natural and probable consequence of his acts, were neither illogical, improbable nor unwarranted and were based on evidence supporting them and its general judgment. The mere fact some of appellee's statements may have been on the verge of contradiction or open to speculation does not permit this court to disregard her many direct and positive statements upholding the findings and judgment or justify it in resolving all doubtful questions against her and in favor of the appellant, particularly when the latter made no attempt to impeach her testimony. Moreover, we are satisfied the evidence sustains such findings. It follows the judgment allowing recovery under the policy must be upheld.

Once liability under the policy is established the error assigned in the allowance of an attorney fee to be taxed as part of the costs becomes untenable (G. S. 1935, 40-256; *Frazier v. Royal Life & Cas. Ass'n*, 158 Kan. 533, 148 P. 2d 503).

Appellant's contention the fee of $500 allowed was excessive has some merit. Our views as to the purpose of the statute have been stated (*Lattner v. Federal Union Ins. Co.*, 160 Kan. 472, 480, 163 P. 2d 389) and need not be repeated. Appellee seeks to justify the allowance as not excessive because two attorneys were employed by her. That is not the test. In the determination of what constitutes

a reasonable sum under the statute the amount involved must always be one of the controlling factors. When that is given consideration, along with the fact there was no spirited trial but a submission of the cause solely on testimony given by appellee at a former trial, we feel impelled to hold the fee was excessive and should be reduced to $400.

With the foregoing modification the judgment is affirmed.

ARN, J., not participating.