LYNN M. HARVEY, Widow and Administratrix of the Estate of MICHAEL E. WICHMANN, Deceased, Employee v. RALEIGH POLICE DEPARTMENT, CITY OF RALEIGH, Employer, Self-Insured

No. 8610IC891

(Filed 5 May 1987)

1. **Master and Servant §§ 64.1, 68— workers' compensation—suicide by police officer—occupational disease—insufficiency of findings**

The Industrial Commission's conclusion that the death of an employee, a police officer who committed suicide, was not due to an occupational disease was not supported by findings of fact where plaintiff's claim was based on her allegation that her husband's suicide was the result of a dysthymic disorder caused by his employment, but the Commission failed to determine whether the employee had a dysthymic disorder and failed to determine whether a dysthymic disorder was an occupational disease.

2. **Master and Servant §§ 64.1, 68— workers' compensation—suicide by police officer—causation—insufficiency of findings**

The Industrial Commission erred in concluding that an employee's suicide was not caused by his occupation where the Commission failed to determine whether the employee's employment caused his dysthymic disorder and whether the dysthymic disorder was the cause of his suicide.

3. **Master and Servant §§ 64.1, 68— workers' compensation—suicide—conclusion of willful intention to injure or kill self—insufficiency of findings**

The Industrial Commission's conclusion that an employee came to his death by reason of his willful intention to injure or kill himself was not supported by the findings of fact where the Commission made no findings as to whether the employee became mentally deranged and deprived of normal judgment as a result of an occupational disease and committed suicide in consequence.

4. **Master and Servant §§ 64.1, 68— workers' compensation—suicide caused by occupational disease—compensability**

An employee's suicide caused by an occupational disease is compensable under the Workers' Compensation Act.

5. **Master and Servant §§ 64.1, 68, 93.3— workers' compensation—employee's suicide—psychological autopsy—expert evidence admissible**

In a workers' compensation proceeding where plaintiff claimed that her husband's suicide was the result of a dysthymic disorder caused by his employment, evidence of a psychological autopsy performed by an expert in psychiatry, suicidology, and police stress was admissible for the purpose of determining the mental state of the deceased at the time of his suicide.

APPEAL by plaintiff from an Opinion and Award of the Industrial Commission filed 22 May 1986. Heard in the Court of Appeals 14 January 1987.

*Michaels Law Offices, P.A., by Gregory M. Martin, for plaintiff-appellant.*

*Dawn S. Bryant for defendant-appellee.*

GREENE, Judge.

In February of 1978, the Raleigh Police Department hired Michael Wichmann as a police officer. Four years later, Wichmann committed suicide. His widow instituted this action under the Workers' Compensation Act.

When Wichmann applied for the position of police officer in January of 1978, he took some psychological tests. The tests revealed no signs of anxiety or depression. However, during the last six months of his life, Wichmann suffered from anxiety, impotence, fatigue, and indigestion and often had violent outbursts of anger. The outbursts occurred right after he would arrive home after his shift at the department. Several times after 1978, he threatened suicide—sometimes over what would seem to be a small problem arising out of his work.

At the initial hearing before the Deputy Commissioner, Dr. Bruce L. Danto testified for the plaintiff. He was tendered as an expert in psychiatry, suicidology and police stress. Dr. Danto indicated he had never seen or spoken with Wichmann but had performed a "psychological autopsy" on the decedent. A psychological autopsy involves interviewing family members and reviewing records—generally employment records, school records and psychiatric notes. Its purpose is to determine the probable cause of death or the person's state of mind at the time of the death. Dr. Danto testified he had conducted hundreds of psychological autopsies during his practice.

Dr. Danto was of the opinion that Wichmann suffered from a dysthymic disorder (depression), that his employment significantly contributed to the disorder and that the disorder was the direct cause of his suicide. Dr. Danto also testified to the amount and type of stress police officers are exposed to compared to the general public.

Dr. John McCall was tendered as an expert in psychology and testified for the employer. Dr. McCall was of the opinion that it is not possible to positively diagnose a mental illness not

diagnosed prior to a person's death. He also expressed his opinion that the stress to which law enforcement officers are exposed is not significantly different from the stress to which other professional persons are exposed. Dr. McCall indicated there were many stressors in Wichmann's life, including some not related to his employment. He did not know which one caused Wichmann to commit suicide.

The Deputy Commissioner found for plaintiff and awarded her compensation, attorney fees, burial expenses, Dr. Danto's witness fee and the costs of Danto's deposition. Defendant appealed to the Full Commission.

On review, the Commission vacated the Deputy Commissioner's award, denied plaintiff's claim and taxed the costs of Dr. Danto's deposition to the defendant. Plaintiff appeals from the denial of her claim.

This Court's review is limited to whether there was competent evidence before the Commission to support its findings of fact, whether the findings justify the Commission's conclusions and whether the conclusions support the Commission's decision. *Henry v. A. C. Lawrence Leather Co.*, 231 N.C. 477, 479, 57 S.E. 2d 760, 762 (1950). The issues before us concern the Commission's conclusions, the competency of Dr. Danto's testimony and whether the Commission erred in ordering the defendant-employer to pay the costs of Dr. Danto's deposition. The Commission's conclusions will be addressed in the first three sections. The pertinent conclusion is set out in italics at the beginning of each section.

I

[1] 1. *The employee's death was not due to a compensable disease within the meaning of G.S. 97-53(13).*

This conclusion is not supported by the findings of fact for two reasons. First, the Commission failed to determine whether Wichmann had a dysthymic disorder.

The Industrial Commission is required to make specific findings with respect to crucial facts upon which the question of plaintiff's right to compensation depends. *Gaines v. L. D. Swain & Son, Inc.*, 33 N.C. App. 575, 579, 235 S.E. 2d 856, 859 (1977), *citing Smith v. Construction Co.*, 27 N.C. App. 286, 218 S.E. 2d 717 (1975).

Plaintiff's claim is based on her allegation that her husband's suicide was the result of a dysthymic disorder caused by his employment. Thus, whether Wichmann suffered from a dysthymic disorder is a crucial fact.

On this question, the Commission only found:

The deceased employee never sought medical attention or professional care for any dysthymic disorder or depressive reaction or depression while he was alive and was never diagnosed while living by any medical professional as being depressed.

The Commission's finding merely recites evidence presented at the hearing. Whether Wichmann sought medical attention or was diagnosed before his death does not answer the issue of whether Wichmann suffered from a dysthymic disorder. Therefore, the Commission failed to determine a crucial fact.

Second, there are no findings adequate to support a conclusion that if Wichmann had a dysthymic disorder, it was not an occupational disease.

An occupational disease can be:

Any disease . . . which is proved to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment, but excluding all ordinary diseases of life to which the general public is equally exposed outside of the employment.

N.C.G.S. Sec. 97-53(13) (Nov. 1985).

Three conditions must be met for a disease to be occupational under Section 97-53(13). The disease must be:

(1) characteristic of persons engaged in the particular trade or occupation in which the claimant is engaged; (2) not an ordinary disease of life to which the public generally is equally exposed with those engaged in that particular trade or occupation; and (3) there must be "a causal connection between the disease and the [employee's] employment."

*Rutledge v. Tultex Corp.*, 308 N.C. 85, 93, 301 S.E. 2d 359, 365 (1983) (citations omitted). The first two elements are met "if, as a matter of fact, the employment exposed the worker to a greater

risk of contracting the disease than the public generally." *Id.* at 93-94, 301 S.E. 2d at 365. The third is satisfied if the employment "significantly contributed to, or was a significant causal factor in, the disease's development. This is so even if other non-work-related factors also make significant contributions, or were significant causal factors." *Id.* at 101, 301 S.E. 2d at 369-70.

Evidence before the Commission was that stress, or stressors, caused dysthymic disorders. The Commission found that "[m]any occupations expose one to stressors, including the occupation of a law enforcement officer . . . . Stressors are not unique to the occupation of a law enforcement officer." Defendant interprets this finding to mean that dysthymic disorders are not unique to law enforcement employment. Then, from this interpretation, defendant argues the Commission found dysthymic disorders are not characteristic of police work but an ordinary disease of life to which the public is equally exposed outside of police work. Even if we were to accept defendant's interpretation of the finding, it does not support the conclusion that Wichmann's death was not due to a compensable occupational disease.

A disease need not be unique to the employee's occupation in order to qualify as an occupational disease. *See Booker v. Duke Medical Center*, 297 N.C. 458, 474, 256 S.E. 2d 189, 199 (1979). The Commission only found that stressors are not unique to police work. It did not find that Wichmann's employment did not expose him to a greater risk of developing a dysthymic disorder than the public generally. Therefore, the Commission failed to find the absence of the first two elements set forth in *Rutledge*.

Neither did the Commission find that Wichmann's occupation was not a significant causal factor in the development of his alleged dysthymic disorder. Therefore, the Commission failed to find the absence of the third element set out in *Rutledge*.

Since the Commission failed to find the absence of any of the three elements required under *Rutledge*, its first conclusion is not supported by the findings of fact.

II

[2]    2. *The cause of the employee's suicide was not his occupation.*

The Commission erred in concluding Wichmann's suicide was not caused by his occupation because the Commission failed to properly address the issues of causation.

There are two issues of causation in this case: 1) whether Wichmann's employment caused the dysthymic disorder and 2) whether the dysthymic disorder was the cause of his suicide. The Commission must determine each issue of causation. The first issue of causation is part of the determination of whether the employee's disease is an occupational disease. It is discussed above in section I. The second issue of causation, if reached, may require a determination of whether the employee willfully intended to kill or injure himself, was intoxicated or was under the influence of a controlled substance. If the employer produces evidence to that effect, a determination of these questions is required. The second issue of causation is discussed below in section III. The Commission's second conclusion answers neither of the two issues of causation. Thus, the conclusion cannot support the Commission's decision.

### III

[3] 3. *The deceased came to his death by reason of his willful intention to injure or kill himself.*

N.C.G.S. Sec. 97-12 states in pertinent part:

No compensation shall be payable if the injury or death to the employee was proximately caused by:

(1) His intoxication, provided the intoxicant was not supplied by the employer . . .; or

(2) His being under the influence of any controlled substance . . . where such controlled substance was not by prescription by a practitioner; or

(3) His willful intention to injure or kill himself or another.

Intoxication, willful intention and being under the influence of a controlled substance are affirmative defenses which place the burden of proof on the employer in a claim for workers' compensation. Any of these will be a proximate cause of the employee's death or injury if it is a cause in fact. *See Rorie v. Holly Farms*

*Poultry Co.*, 306 N.C. 706, 710-11, 295 S.E. 2d 458, 461-62 (1982); *Anderson v. Century Data Systems, Inc.*, 71 N.C. App. 540, 545, 322 S.E. 2d 638, 641 (1984).

Plaintiff contends there are no findings sufficient to support the Commission's third conclusion. Defendant contends, by its cross-assignment of error, that the Commission erred in failing to determine whether Wichmann was voluntarily intoxicated at the time he committed suicide. We first address defendant's cross-assignment of error.

There was evidence that Wichmann had been drinking alcohol prior to his death. However, since the Commission did not find Wichmann suffered from an occupational disease, it did not need to address the issue of the cause of Wichmann's suicide. Therefore, the Commission did not err by not determining whether Wichmann was voluntarily intoxicated. Should the issue of the cause of Wichmann's suicide be reached on remand, defendant's contention should be properly resolved.

We next address plaintiff's contention that there are no findings sufficient to support the conclusion that Wichmann came to his death by reason of his willful intention to kill or injure himself.

Our Supreme Court held in *Petty v. Associated Transport, Inc.*, 276 N.C. 417, 173 S.E. 2d 321 (1970) that "an employee who becomes mentally deranged and deprived of normal judgment as the result of a compensable accident and commits suicide in consequence does not act wilfully within the meaning of G.S. 97-12." *Id.* at 428, 173 S.E. 2d at 329.

> To say, as a matter of law, that one who intentionally takes his own life acts willfully is to ignore "the role which pain or despair may play in breaking down a rational, mental process." "If the sole motivation controlling the will of the employee when he knowingly decides to kill himself is the pain and despair caused by the injury, and if the will itself is deranged and disordered by these consequences of the injury, then it seems wrong to say that this exercise of will is 'independent,' or that it breaks the chain of causation. Rather, it seems to be in the direct line of causation."

*Id.* at 426, 173 S.E. 2d at 328 (citations omitted). This is known as the chain-of-causation test.

**[4]** While *Petty* concerned an employee who had suffered a compensable accident rather than an occupational disease, we hold that an employee's suicide caused by an occupational disease is also compensable under the Workers' Compensation Act. This is so because N.C.G.S. Sec. 97-52 makes it clear that the death of an employee resulting from an occupational disease shall be treated as the "happening of an injury by accident." Therefore, if Wichmann became mentally deranged and deprived of normal judgment as a result of an occupational disease and committed suicide in consequence, he did not willfully intend to kill or injure himself.

The Commission's conclusion that Wichmann came to his death by reason of his willful intention to injure or kill himself is not supported by any finding that Wichmann was not mentally deranged and deprived of normal judgment as a result of his alleged occupational disease or that he did not commit suicide in consequence. Thus, the Commission's third conclusion is not supported by the findings and cannot be upheld.

IV

**[5]** As the Commission did not refer to any testimony by Dr. Danto, it appears it may have disregarded the evidence of the psychological autopsy. Since the issue must arise upon reconsideration by the Commission, we hold here that the evidence was competent and properly admitted for the purpose of determining the mental state of the deceased at the time of his suicide.

The question of admissibility of such testimony has not been before our courts, but we note that Rule 702 of the North Carolina Rules of Evidence provides for expert opinion testimony to a fact in issue if the expert's specialized knowledge will assist the trier of fact. N.C.G.S. Sec. 8C-1, Rule 702 (Oct. 1986).

In this case, Dr. Danto's testimony was properly admitted into evidence. Undoubtedly it would have been helpful if, as a psychiatrist, Dr. Danto had interviewed the decedent before his death. The fact that he did not does not render his testimony inadmissible or incompetent.

We hold that Dr. Danto's testimony would assist the Commission in determining whether Wichmann had a dysthymic disorder. Dr. Danto was tendered as an expert in psychiatry, suicidology and police stress. In compiling his psychological autopsy, he reviewed exhibits submitted to the Commission. These exhibits included police department records and evaluation reports, a workbook completed by Wichmann during a stress workshop, the sheriff's investigation report of Wichmann's death, and the results of the battery of psychological tests given Wichmann early in his employment. Dr. Danto had also spoken to the plaintiff, Wichmann's widow, by phone.

In addition, we note that other jurisdictions have held psychological autopsies to be admissible as competent evidence for the determination of the decedent's state of mind at his death. *See Campbell v. Young Motor Co.*, --- Mont. ---, 684 P. 2d 1101 (1984). *Cf. Thompson v. Mayes*, 707 S.W. 2d 951 (Tx. App. 1986) (the evidence was not admissible to show decedent's state of mind two years before death).

Since Dr. Danto's testimony is admissible and competent, the Commission must consider it upon remand in determining whether Wichmann had a dysthymic disorder. *See Harrell v. J. P. Stevens & Co.*, 45 N.C. App. 197, 205, 262 S.E. 2d 830, 835, *disc. rev. denied*, 300 N.C. 196, 269 S.E. 2d 623 (1980).

## V

By its cross-assignment of error, defendant contends the Commission abused its discretion by ordering defendant to pay the costs of Dr. Danto's deposition.

Plaintiff asked Dr. Danto to perform the psychological autopsy and also requested Dr. Danto's deposition be taken pursuant to N.C.G.S. Sec. 97-80(a).

In addition to providing the procedure for requesting depositions, Section 97-80(a) also empowers the Industrial Commission to tax costs of the deposition as it taxes other costs. There is no restriction in either the Workers' Compensation Act or the Rules of the Industrial Commission on the Commission's discretion to tax costs of the deposition when the plaintiff requests the deposition of its own medical expert. Therefore, we affirm that part of

the Industrial Commission's order requiring defendant to pay the costs of Dr. Danto's deposition.

For the reasons stated herein, the Opinion and Award of the Commission filed 22 May 1986 is affirmed in part, reversed in part and remanded to the Commission for further consideration consistent with this opinion.

Affirmed in part, reversed in part and remanded.

Judges WELLS and EAGLES concur.