(803 P.2d 1033)

No. 64,689

ARLENE EVANS, *Appellee/Cross-Appellant,* v. PROVIDENT LIFE & ACCIDENT INSURANCE COMPANY, *Appellant/Cross-Appellee.*

Opinion filed December 28, 1990.

*Kenneth M. Clark*, of Young, Bogle, McCausland, Wells & Clark, P.A., of Wichita, for appellant.

*Timothy J. King* and *Gerald D. Lasswell*, of Stinson, Lasswell & Wilson, of Wichita, and *Cecil E. Merkel*, of Merkel Chartered, of Wichita, for appellee.

Before BRAZIL, P.J., LEWIS, J., and GARY L. NAFZIGER, District Judge, assigned.

BRAZIL, J.: Provident Life & Accident Insurance Company (Provident) appeals a jury verdict awarding Arlene Evans the proceeds of an accidental death insurance policy issued by Provident and an award of attorney fees for Evans in the case. Evans cross-appeals the amount of attorney fees awarded, the interest rate applied to the award, and the question of whether Evans should have been allowed to discover Provident's attorney fee costs.

Dr. Grant Evans was insured under a group policy of accidental death and dismemberment insurance issued by Provident. Dr. Evans worked for many years as an obstetrician/gynecologist but was forced to retire in 1986 because of his numerous health problems. In March 1987, he was admitted into the hospital with a diagnosis of major depression with melancholy. On April 11, 1987, a nurse found Dr. Evans in his bathroom lying in the bathtub with all his clothing in flames. He died several hours later.

After an investigation, Provident denied Dr. Evans' widow's claim based on an exclusion in the policy for suicide or inten-

tionally self-inflicted injuries. Subsequently, a jury returned a special verdict finding that the death of Dr. Evans was accidental.

1. Jurisdiction.

Evans argues that this court does not have jurisdiction to hear this appeal because Provident's notice of appeal was not timely.

The journal entry of judgment in the case was entered on April 21, 1989, corrected by an order nunc pro tunc entered on May 8, 1989, and the order denying Provident's motion for judgment notwithstanding the verdict was entered on July 7, 1989. The journal entry determining the award of attorney fees to Evans was not entered until November 28, 1989. Provident filed its notice of appeal on December 27, 1989. The notice of appeal was within the thirty-day limit set forth by K.S.A. 1989 Supp. 60-2103(a) if the "entry of the judgment" is determined to be November 28, 1989.

On March 23, 1990, the Kansas Supreme Court filed its opinion in the case of *Snodgrass v. State Farm Mut. Auto. Ins. Co.*, 246 Kan. 371, 789 P.2d 211 (1990). In *Snodgrass*, the court said: "We adopt the rationale of *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 100 L. Ed. 2d 178, 108 S. Ct. 1717 (1988). A decision on the merits is final for purposes of appeal even if a request or motion for attorney fees attributable to the case has not yet been determined." 246 Kan. at 374. "We find the reasoning of *Budinich* persuasive. We believe a bright-line rule that a decision on the merits is a final judgment for appeal purposes despite any remaining question as to attorney fees is necessary and appropriate." 246 Kan. at 377.

Under the *Snodgrass* decision, Provident's notice of appeal would not be timely. However, *Snodgrass* was not filed until nine months after the final order from which Provident arguably should have appealed. The unfairness of applying new procedural rules retroactively so as to strip this court of jurisdiction, when the parties proceeded properly under the old rule, is obvious. Evans cites no authority for such a retroactive application of new procedural rules and, indeed, such an application would seem to be at odds with the spirit of K.S.A. 60-102, which states that the provisions of the civil procedure code "shall be liberally construed to secure the just, speedy and inexpensive determination of every action." The ruling in *Snodgrass* allowed the court to retain ju-

risdiction in that appeal. Retroactive application of the new rule in *Snodgrass* would deny us jurisdiction in this appeal.

We conclude that Provident's notice of appeal was timely under the rules then existing and that this court has jurisdiction over this appeal.

2. Provident's motions for directed verdict and for judgment notwithstanding the verdict.

Provident argues that its motions for directed verdict and for judgment notwithstanding the verdict should have been granted by the trial judge.

"In ruling on a motion for a directed verdict, the court is required to resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought and where reasonable minds could reach different conclusions based on the evidence the motion must be denied and the matter submitted to the jury. This rule is also applicable when appellate review is sought on a motion for directed verdict. Further, the same test is applicable to a motion for judgment notwithstanding the verdict." *Holley v. Allen Drilling Co.*, 241 Kan. 707, 710, 740 P.2d 1077 (1987).

Evans was required to prove that "the insured, Grant E. Evans, suffered accidental bodily injury resulting in the loss of his life as provided in the group policy issued by the defendant." There was clearly enough evidence to sustain Evans' case against the motions for direct verdict and judgment notwithstanding the verdict. Evans provided testimony by the chief investigator for the Wichita Fire Department that Dr. Evans' death was accidental. She further presented evidence that Dr. Evans was a heavy smoker, that he was careless in his smoking habits, that he had repeatedly burned clothing and objects with his smoking, and that he had access to cigarettes and matches in his room. Evans further presented evidence that Dr. Evans also used matches to dispel odoriferous body gases, that a pack of matches was found among the debris from the fire, and that the fire started in Dr. Evans' crotch area while he was sitting on the toilet. Resolving all inferences in favor of Evans, the trial judge was correct in denying the motions and submitting the case to the jury.

3. Burden of proof.

Provident claims that the trial court's instructions erroneously placed the burden of proof on it. Instruction No. 9 set forth the burden of proof:

"Plaintiff claims that on April 11, 1987, the insured, Grant E. Evans, suffered accidental bodily injury resulting in the loss of his life as provided in the group policy issued by defendant.

"Plaintiff has the burden to prove that her claim is more probably true than not true.

"Defendant claims that Grant E. Evans died as the result of suicide or intentionally self-inflicted injury.

"Defendant has the burden to prove that its claims are more probably true than not true."

Provident notes in its brief that one of the "limitations and exclusions" included in the policy denies coverage for suicide or intentionally self-inflicted injuries. Provident argues at some length in its brief, using quotations from treatises on insurance, a Tenth Circuit case from 1963, and a line of cases from New York decided in the 1930's, that Evans was required to prove that Dr. Evans' death was not suicide. Provident overlooks more recent Kansas case law that is clearly applicable.

"When an insurer seeks to avoid liability on the ground that the accident or injury for which compensation is demanded is covered by some specific exception to the general terms of the policy, the burden of proof rests upon the insurer to prove the facts which bring the case within such specified exception." *Baugher v. Hartford Fire Ins. Co.*, 214 Kan. 891, Syl. ¶ 4, 522 P.2d 401 (1974).

In *Alliance Life Ins. Co. v. Ulysses Volunteer Fireman's Relief Assn.*, 215 Kan. 937, 529 P.2d 171 (1974), the court considered a case in which a decedent was killed in an aircraft owned by a flying club of which he was a member. The decedent was covered by an insurance policy which excluded " '[i]njuries sustained by the Insured while piloting or serving as a crew member of an airplane.' " 215 Kan. at 943. Both men aboard the plane were killed and there was no way to tell who was piloting the plane at the time it crashed. 215 Kan. at 943. In reversing the trial court's judgment for the defendant insurance company, the appellate court said: "An insurance company seeking to avoid liability under an exclusionary clause in its policy for a loss which is otherwise covered has the burden of proving that the loss falls within the exclusion." 215 Kan. 937, Syl. ¶ 10.

Evans also relies on *Broyles v. Order of United Commercial Travelers*, 155 Kan. 74, 122 P.2d 763 (1942), in which the decedent was found on the floor with a fractured skull and the

accidental death policy excluded death due to injuries intentionally inflicted by the insured or others. In reversing judgment for the insurance company, the court said: "In such a case as described, where the proof shows death of the insured by unexplained, violent and external means, a prima facie showing is made that the injuries were accidental." 155 Kan. 74, Syl. ¶ 4.

The trial court correctly instructed the jury on the burdens of proof to be carried by Provident and by Evans. Evans had to prove that there was an accidental bodily injury resulting in death if she were to recover, and Provident was required to prove suicide or self-inflicted injury if it were to prevail.

4. The presumption against suicide.

Provident argues that the trial court improperly instructed the jury on the presumption against suicide. The presumption against suicide was embodied in Instruction No. 14: "If you are unable to decide whether the cause of death was accident or suicide, your verdict must be that the cause of death was by accident."

PIK Civ. 2d 2.72 states:

"Because of the instincts of self-preservation and love of life which are characteristic of the normal person, it is presumed that [decedent] died as a result of accidental causes (natural causes) rather than as a result of attempted suicide. This presumption may be overcome if you are persuaded by the evidence that [decedent] intended to take his own life."

Provident makes no suggestion that it was prejudiced by the giving of instruction No. 14, rather than the PIK instruction, other than to make an unsupported assertion that the instruction is prejudicial as contrary to the burden of proof. Because the court did correctly state the respective burdens of proof, and the effect of the presumption against suicide is to tip the balance to a finding of accidental death where the evidence is even, instruction No. 14 was proper, although the PIK instruction might have been preferable.

Provident's other line of argument with respect to the presumption against suicide is that no instruction should have been given since Dr. Evans was not a sane and normal person. The comment to PIK Civ, 2d 2.72 states: "It would appear this instruction would only be proper when the deceased was sane at the time of death."

The record is devoid of any evidence that Dr. Evans was insane at the time of his death. He was clearly suffering from depression, but he had not been adjudicated insane, and there was no testimony to the effect that his condition warranted such a finding of insanity. In order for Provident to prevail on this point, the trial court would have to find as a matter of law that Dr. Evans was insane for the purposes of the presumption against suicide merely because he was being treated for severe depression. Provident cites no case law which would support such a finding nor is any apparent. Instruction No. 14 on the presumption against suicide was proper.

5. Provident's mental infirmity theory.

The accidental death policy under which Dr. Evans was insured has an exclusion for losses caused by mental infirmity. Provident contends that the trial court erred in refusing to give an instruction requiring the jury to find for Provident if it found that Dr. Evans' death was due to his mental infirmity.

A party is entitled to a jury instruction in explaining its theory of the case when there is sufficient evidence to support such a theory. *McGraw v. Sanders Co. Plumbing & Heating, Inc.*, 233 Kan. 766, Syl. ¶ 3, 667 P.2d 289 (1983). Provident argues that there must have been sufficient evidence to support its mental infirmity theory because Evans' motion for directed verdict on the question of mental infirmity was overruled.

Arguably, the evidence established that Dr. Evans had a mental infirmity; he was severely depressed. However, there was no evidence adduced at trial as to how this mental infirmity would have resulted in his death other than by an intentional suicidal act. Indeed, Provident's entire theory of the case seems to have been that Dr. Evans committed suicide. All of the evidence adduced by Provident was directed toward a showing that Dr. Evans knew exactly what he was doing, formed an intent to take his own life, and carried out his plan.

The trial court did not err in refusing to give an instruction on Provident's mental infirmity theory.

6. Dr. Modlin's testimony.

Provident contends that the trial court erred in granting Evans' motion in limine limiting the testimony of Dr. Herbert Modlin. Dr. Modlin is a board certified psychiatrist associated with the

Menninger Clinic in Topeka, Kansas, who has studied the topic of suicide and published at least one book or article on it. Provident sought to introduce Dr. Modlin's opinion that Dr. Evans committed suicide and did not die by accident. Dr. Modlin's opinion was based on a procedure called a "psychological autopsy" that he conducted by reviewing medical records, hospital records, deposition testimony, and other evidence.

"The qualifications of an expert witness and the admissibility of his testimony are within the sound discretion of the trial judge." *Plains Transp. of Kan., Inc. v. King*, 224 Kan. 17, 21, 578 P.2d 1095 (1978).

As a preliminary matter, Evans contends that the issue is not properly before this court because there was no proffer of evidence before the trial judge. A pretrial hearing was conducted on Evans' motion in limine before a different judge. The pretrial judge ruled that Dr. Modlin could testify only as to Dr. Evans' state of mind at the time of his death and not to the ultimate question of whether he in fact committed suicide.

Later, the trial judge noted that the pretrial judge's ruling on the motion in limine was binding on the trial court. Provident contends that under these circumstances a formal proffer was not required. *McGraw v. Sanders Co. Plumbing & Heating, Inc.*, 233 Kan. at 770, supports Provident's position:

"Even though appellant made no formal proffer of evidence to show the expected answer of the witnesses questioned, the argument on the motion in limine coupled with the in-court colloquy fully set out appellant's position. Given the liberal construction to be accorded our rules of civil procedure, (K.S.A. 60-102), this was sufficient to satisfy the statutes."

We conclude that the issue is properly before this court on appeal.

The judge who ruled on the motion in limine did not abuse her discretion in limiting Dr. Modlin's testimony. Before expert scientific opinion may be received into evidence at trial, the basis of that opinion must be shown to be generally accepted within the expert's particular scientific field. *State v. Miller*, 240 Kan. 733, 736-37, 732 P.2d 756 (1987). Furthermore, an expert's opinion must be based on reasonably accurate data and not simply on assumption and speculation. *Lollis v. Superior Sales Co.*, 224 Kan. 251, 258, 580 P.2d 423 (1978).

In the present case, testimony by Dr. Modlin as to whether Dr. Evans actually committed suicide would be purely conjectural. Dr. Modlin was clearly qualified to testify that he believed Dr. Evans was suicidal on the day of his death, and Dr. Modlin so testified. However, Provident offered no evidence, either in the hearing on the motion in limine or on appeal, to indicate that a psychiatrist such as Dr. Modlin is qualified to render an opinion on whether a particular individual carried out his suicidal intent.

Provident relies on *Harvey v. Raleigh Police ·Dept.*, 85 N.C. App. 540, 355 S.E.2d 147 (1987), in which a psychological autopsy was admitted for the purpose of determining a worker's mental state at the time of his suicide. The *Harvey* court stated: "We hold that [the expert witness'] testimony would assist the Commission in determining whether [decedent] had a dysthymic disorder. . . . In addition, we note that other jurisdictions have held psychological autopsies to be admissible as competent evidence *for the determination of the decedent's state of mind at his death.*" (Emphasis added.) 85 N.C. App. at 548. The *Harvey* case does not advance Provident's argument because Dr. Modlin was, in fact, allowed to testify as to Dr. Evans' mental state at the time of his death. Neither *Harvey*, nor any of the cases cited therein, show that a court has allowed an expert to testify, based upon a psychological autopsy, that he or she believes that the decedent did actually commit suicide.

Provident also cites *Farmers Ins. Co. v. Smith*, 219 Kan. 680, 549 P.2d 1026 (1976), for support. In *Smith*, the court considered the expert testimony of a fire investigator where his testimony corroborated that of other witnesses:

"We do not find the evidence in this case to be so uncertain or speculative as to justify the action of the trial court in excluding Sevart's opinion as to the source of the fire. By his elimination of other possible causes for the fire it would appear that his conclusion was reasonable that the fire was the result of some defect in the mobile home's electrical system." 219 Kan. at 690.

Unlike *Smith*, Dr. Modlin's opinion in the present case is simply an inference based on another inference. While a psychiatrist might be able to infer from the medical records available to him that Dr. Evans was suicidal at the time of his death, Dr.

Modlin takes the chain of speculation one step further and infers that Dr. Evans in fact acted on his suicidal thoughts. The trial court acted properly in limiting the testimony of Dr. Modlin.

7. Attorney fees.

Provident argues that the trial court erred in awarding attorney fees to Evans. K.S.A. 40-256, which governs the award of attorney fees when one party is an insurance company, provides:

"That in all actions hereafter commenced, in which judgment is rendered against any insurance company . . . on any policy or certificate of any type or kind of insurance, if it appear from the evidence that such company . . . has refused without just cause or excuse to pay the full amount of such loss, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action."

The question of whether an insurer has refused to pay without just cause or excuse is one of fact for the trial court. *Farm Bureau Mutual Ins. Co. v. Carr*, 215 Kan. 591, 598, 528 P.2d 134 (1974). In refusing to pay a claim, an insurance company has a duty to make a good faith investigation of the facts surrounding the claim. *Brown v. Combined Ins. Co. of America*, 226 Kan. 223, 227, 597 P.2d 1080 (1979). "[I]f there is a bona fide and reasonable factual ground for contesting the insured's claim, there is no failure to pay 'without just cause or excuse.' " *Koch, Administratrix v. Prudential Ins. Co.*, 205 Kan. 561, 565, 470 P.2d 756 (1970). "Whether an insurance company's refusal to pay is without just cause or excuse is determined on the facts and circumstances in each case." *Smith v. Blackwell*, 14 Kan. App. 2d 158, 165, 791 P.2d 1343 (1989).

"Whether there was just cause to refuse payment, and therefore justification for denial of attorney fees, is in the trial court's sound discretion." *DiBassie v. American Standard Ins. Co. of Wisconsin*, 8 Kan. App. 2d 515, Syl. ¶ 8, 661 P.2d 812 (1983). "Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable [person] would take the view adopted by the trial court." *Stayton v. Stayton*, 211 Kan. 560, 562, 506 P.2d 1172 (1973).

Under the facts of the present case, it cannot be said that the trial judge abused his discretion in awarding attorney fees to Evans.

Evans' claim was ultimately denied by Joe Roberts, Jr., manager of the life claims department for Provident. Roberts testified that he denied the claim based upon his review of all the information which Provident had acquired. However, he also testified that the hospital notes indicated some improvements in Dr. Evans' condition prior to the fatal incident and that neither the Wichita Fire Department nor the county coroner's office had ruled Dr. Evans' death a suicide.

Evidence upon which Roberts says he relied in denying the claim, such as the short period of time between the fire and the time Nurse Boykins last saw Dr. Evans, and the presence of matches in the bathroom, are equally consistent with accident as with suicide. On the whole, we cannot conclude the award of attorney fees was an abuse of discretion.

8. The amount of attorney fees due Evans

Evans argues that the trial court should have awarded her more attorney fees because the higher amount she requested was reasonable.

Evans was awarded attorney fees pursuant to K.S.A. 40-256, which reads: "[T]he court in rendering such judgment shall allow the plaintiff a *reasonable* sum as an attorney's fee for services in such action." (Emphasis added.)

This court discussed the operation of K.S.A. 40-256 in *Hochman v. American Family Ins. Co.*, 9 Kan. App. 2d 151, 154-55, 673 P.2d 1200 (1984):

"These statutes allow 'reasonable' fees to parties who have prevailed against an insurance company in certain cases. . . . In discussing the purpose of attorney fee statutes, the Kansas Supreme Court has stated the purpose of the award of fees is not to punish the insurance company but 'to permit the allowance of a fair and reasonable compensation to the assured's attorney . . . .' *Lattner v. Federal Union Ins. Co.*, 160 Kan. 472, 481, 163 P.2d 389 (1945). The amount of attorney fees to be awarded is a matter largely within the trial court's discretion. *Buchanan v. Employers Mutual Liability Ins. Co.*, 201 Kan. 666, 443 P.2d 681 (1968). An abuse of discretion arises only if no reasonable person would have taken the same position as the district court. See *Stayton v. Stayton*, 211 Kan. 560, 562, 506 P.2d 1172 (1973)."

There is nothing in the record to indicate that the $71,645.65 the trial judge allowed to Evans is not a "reasonable" fee. The record does disclose that Evans originally claimed $91,541.75. A

hearing was held on the subject of attorney fees, and Richard C. Hite appeared on behalf of Evans as an expert witness. Hite testified that the $91,541.75 would have been a reasonable fee for the work done on the case. Hite gave no testimony that anything less than that amount would be unreasonable or that the $71,645.65 ultimately settled on by the judge would not be a reasonable fee.

The trial court itself is an expert in the area of attorneys' fees and can draw on and apply its own knowledge and expertise in evaluating their reasonableness. *Buchanan v. Employers Mutual Liability Ins. Co.*, 201 Kan. 666, 676, 443 P.2d 681 (1968). In the present case, the trial judge awarded Evans attorney fees at a rate of $85 per hour for 842.89 hours. There has been no showing that the trial judge abused his discretion.

Provident argues that the amount of attorney fees awarded was improper because K.S.A. 40-256 allows the award of fees for only one attorney or firm. It cites for support *Wolf v. Mutual Benefit Health & Accident Association*, 188 Kan. 694, 713, 366 P.2d 219 (1961), which states:

> "The statute [K.S.A. 40-256] provides for the allowance of a *reasonable sum* as an attorney fee to be recovered and collected as a part of the costs. It does not contemplate an amount in the nature of a speculative or contingent fee conditioned on winning the case, but only a reasonable fee for the appellee to pay his attorney for prosecuting the case, and the statute does not contemplate a fee for more than one attorney or firm of attorneys."

Evans correctly points out, and Provident admits in its reply brief, that *Wolf* did not involve a situation in which a claim was being made for fees based on the services of more than one attorney.

Provident also cites *Akins v. Illinois Bankers Life Assurance Co.*, 166 Kan. 648, 203 P.2d 180 (1949), in support of its argument. The only relevant language in the opinion is as follows:

> "Appellant's contention the fee of $500 allowed was excessive has some merit. . . . Appellee seeks to justify the allowance as not excessive because two attorneys were employed by her. That is not the test. In the determination of what constitutes a reasonable sum under the statute the amount involved must always be one of the controlling factors. When that is given consideration, along with the fact there was no spirited trial but a submission of the cause solely on testimony given by appellee at a former trial, we

feel impelled to hold the fee was excessive and should be reduced to $400." 166 Kan. at 656-57.

The Tenth Circuit has cited both *Akins* and *Wolf* in a case in which it refused to increase the amount of attorney fees awarded:

"Here the recovery was substantially less than the fees and expenses claimed. The total claim was based upon the services of two attorneys who were not members of the same firm and who included time and expenses in state court litigation prosecuted by the elevator company concerning the same subject matter but which was of questionable necessity or benefit in relation to the instant case. *The statute warrants the allowance of an attorney's fee based upon representation of a single attorney or firm.* Wolf v. Mutual Benefit Health and Accident Assn., 188 Kan. 694, 366 P.2d 219 (1961). See also Akins v. Illinois Bankers Life Assur. Co., 166 Kan. 648, 203 P.2d 180 (1949). We are not impressed with the elevator company's argument that since its attorneys were associated on this particular case they represented a firm within the contemplation of *Wolf.* Nor do we think the court was required to compensate for all of the time devoted by these attorneys to extensive proceedings collateral to the present case, a substantial portion of which was abortive or for the unsuccessful purpose of avoiding federal jurisdiction. We think there could be properly weighed the necessity and productivity of the hours claimed in relationship to the circumstances of the litigation before it." *Grain Dealers Mut. Ins. Co. v. Farmers U. Coop. E. & S. Ass'n,* 377 F.2d 672, 682-83 (10th Cir. 1967).

In our opinion, *Akins* and *Grain Dealers* stand for the proposition that the employment of two attorneys may not be used to justify an otherwise excessive fee. The language in *Wolf* may be read as an admonition that it is not reasonable to hire two attorneys to do the work of one. However, K.S.A. 40-256 simply requires that the total fee charged be "reasonable." We hold that a plaintiff may employ more than one attorney as long as the total fee is reasonable for the work required. Conversely, an unreasonable fee is not rendered reasonable for the purpose of K.S.A. 40-256 simply because a plaintiff hires more than one attorney. There is nothing in the record to indicate that the amount of attorney fees awarded by the trial judge was not reasonable; indeed, it was $20,000 less than the figure which Evans' expert testified was reasonable.

Provident does not argue that the fees were in any way excessive but that only one of Evans' lawyers should be awarded fees. That argument is not supported by the plain wording of K.S.A. 40-256 or the questionable line of case law cited by Prov-

ident. The trial judge did not abuse his discretion in the amount of attorney fees awarded.

9. Refusal to compel discovery of attorney fees.

Evans contends it was error for the trial judge to deny her motion to compel discovery of the time spent and amount charged by Provident's attorneys in defending its case.

K.S.A. 1989 Supp. 60-226(b)(1) provides: "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action."

Evans makes the following assertion: "The information was relevant to the issue of what would constitute a reasonable fee to be awarded Mrs. Evans. No better evidence could be submitted than what time was expended by Provident's attorneys and their charge for that time." It is difficult to see how the amount of time and money expended in defending a case in any way determines the amount of time and money that is necessary to properly prosecute it. In fact, the easiest cases to prosecute may well require the most time and money to defend. Evans' assertion of relevancy is unsupported and not persuasive.

"The control of discovery is entrusted to the sound discretion of the trial court and orders concerning discovery will not be disturbed on appeal in the absence of a clear abuse of discretion." *In re Marriage of Adams*, 240 Kan. 315, Syl. ¶ 4, 729 P.2d 1151 (1986). Evans makes no attempt to show how she was prejudiced by the trial court's ruling and, in fact, brought in her own expert witness to testify with regard to attorney fees. No abuse of discretion by the trial judge is shown.

10. Prejudgment and postjudgment interest.

Evans contends that the trial court erred in setting the rates of prejudgment and postjudgment interest at seven percent, pursuant to K.S.A. 1989 Supp. 40-447, rather than at ten percent, pursuant to K.S.A. 16-204. We note that on July 1, 1989, the judgment interest rate under K.S.A. 16-204 rose from ten percent to eleven percent.

Before reaching the merits of Evans' argument, this court should note that Evans is precluded from raising any appeal as to prejudgment interest because no argument was ever made to the trial judge that the prejudgment interest rate should be any-

thing other than that mandated by K.S.A. 1989 Supp. 40-447. In fact, at the hearing on the interest rate, Evans' counsel stated:

"Your Honor, it is the plaintiff's contention that 40-447 clearly applies to prejudgment interest because without this there wouldn't be any strength for a plaintiff to obtain prejudgment interest, but following the entry of a judgment, there is no longer monies payable and unpaid, as the lack of 40-477 [*sic*] suggests there, it is due. It accrues interest at the judgment rate."

"A point not raised before or presented to the trial court cannot be raised for the first time on appeal." *Kansas Dept. of Revenue v. Coca Cola Co.*, 240 Kan. 548, 552, 731 P.2d 273 (1987). Evans is precluded from making any argument to this court on appeal about the prejudgment rate of interest.

Turning to the question of postjudgment interest, Evans' first argument is that K.S.A. 1989 Supp. 40-447(a), which sets the rate of interest on death proceeds left on deposit with the insurance company, is not applicable. Rather, she argues that K.S.A. 16-204, the general statute which set the rate of judgment interest, should be applied. One argument that Evans advances for avoiding the interest rate under K.S.A. 1989 Supp. 40-447(a) is that this section became inapplicable because Provident failed to comply with K.S.A. 1989 Supp. 40-447(b). Subsection (b) provides that: "Nothing in this section shall be construed to allow any insurer admitted to transact life insurance in this state to withhold payment of money payable under a life insurance policy to any beneficiary for a period longer than reasonably necessary to transmit such payment."

Evans argues that, because Provident withheld payment under the policy longer than reasonably necessary, Provident may no longer have the benefit of the interest rate spelled out in subsection (a). However, Evans has no authority to support this argument, nor is there any apparent in the Kansas case law, the Kansas statutes, or the legislative history associated with K.S.A. 1989 Supp. 40-447. The plain language of subsection (b) in no way indicates that it includes a penalty for violation that would make subsection (a) inoperable. Rather, it appears that it is simply an admonition to insurance companies not to use K.S.A. 1989 Supp. 40-447 as an excuse to unreasonably withhold payment.

"The fundamental rule of statutory construction is that the intent of the legislature governs. [Citation omitted.] When con-

struing a statute, a court should give words in common usage their natural and ordinary meaning." *Hill v. Hill,* 13 Kan. App. 2d 107, 108, 763 P.2d 640 (1988). There is no support, within the statute or elsewhere, for Evans' reading of K.S.A. 1989 Supp. 40-447(b).

Evans makes an analogous argument with regard to subsection (c) of K.S.A. 1989 Supp. 40-447. Subsection (c) provides: "[T]he insurer shall notify the named beneficiary or beneficiaries at their last known address that interest will be paid on the proceeds of, or payments under, such policy from the date of receipt of due proof of death of the named insured." Evans claims that this section was not complied with and renews her argument that failure to comply with this section makes the interest rate in subsection (a) inapplicable. Her argument must fail for two reasons: there is nothing in the record on appeal to indicate that Provident failed to comply with subsection (c), and there is nothing in the case law, statutes, or legislative history to suggest that failure to comply with subsection (c) strips an insurance company of the benefits of subsection (a).

Evans also notes that K.S.A. 1989 Supp. 40-447(a) provides that insurance companies, "shall pay interest on any moneys payable and unpaid after the expiration of such 10-day period at an annual rate of *not less than* the current rate of interest on death proceeds left on deposit with the insurer plus 1% computed from the date of said receipt." (Emphasis added.) Evans argues that this section sets the minimum interest and not the maximum interest and that the trial court could have awarded a higher rate of interest even if K.S.A. 1989 Supp. 40-447(a) controls. In a similar argument, she analogizes to K.S.A. 26-511, which sets the interest rate to be paid on condemnation awards. That statute has since been amended, but at one time it did not specifically apply to postjudgment interest. See L. 1982, ch. 88, § 2. This court held in *Meinhardt v. Kansas Power & Light Co.,* 8 Kan. App. 2d 471, 473, 661 P.2d 820 (1983), that the postjudgment interest rate set out in K.S.A. 16-204 was controlling, in the absence of specific language in K.S.A. 26-511, making it applicable to the postjudgment period.

We agree with Evans that K.S.A. 1989 Supp. 40-447 sets a minimum interest rate and, because that statute does not specifically set postjudgment interest rates, K.S.A. 16-204 controls.

The case is remanded with directions to award postjudgment interest pursuant to K.S.A. 16-204 and attorney fees the trial court finds are reasonable for appellate work pursuant to K.S.A. 40-256. Affirmed as to all other issues.