JAMIE MOORE, EMPLOYEE, PLAINTIFF v. SULLBARK BUILDERS, INC., EMPLOYER; BUILDERS MUTUAL INSURANCE CO., CARRIER DEFENDANT

No. COA08-1348

(Filed 4 August 2009)

1. **Workers' Compensation— affirmative defense—intoxication—test results did not indicate level—marijuana metabolites**

The Industrial Commission did not err in a workers' compensation case by concluding plaintiff's injuries were compensable and that N.C.G.S. § 97-12 did not bar plaintiff's claim even though the evidence showed defendant tested positive on the date of the injury for cannabinoids, a metabolite of marijuana, because: (1) the competent evidence before the Commission supported its conclusion that plaintiff's injury was not a result of intoxication by marijuana; (2) the Commission is the sole judge of the weight and credibility of conflicting evidence, and it was within the Commission's discretion to determine that a doctor's opinion that plaintiff's toxicology results obtained during testing at the hospital were insufficient to establish plaintiff was under the influence of marijuana was more credible than another doctor's conflicting opinion; (3) although a rebuttable presumption of intoxication may be established as a result of a positive medical test pursuant to N.C.G.S. § 97-12, such tests must "be in a manner generally acceptable to the scientific community and consistent with applicable State and federal law, and both doctors testified that the test performed by the hospital was not completed for forensic purposes and should only be used for medical purposes; (4) a doctor testified that the test results did not indicate the level of marijuana metabolites, thus only allowing the conclusion that marijuana was in plaintiff's system at the time of the injury; and (5) defendant's argument that the award of compensation to a

plaintiff injured while under the influence of a controlled substance is against public policy need not be addressed based on competent evidence that defendant was not intoxicated at the time of his injury.

**2. Workers' Compensation— disability—incapable of work or earning same wages**

The Industrial Commission did not err in a workers' compensation case by determining that plaintiff was entitled to temporary total disability benefits because: (1) the medical evidence shows that plaintiff was physically incapable of work in any employment after his injury; (2) there was competent evidence to show that plaintiff was incapable after his injury of earning the same wages he earned before his injury in any other employment; (3) plaintiff's attempt to return to work with defendant and his unsuccessful attempt to work with his former employer show that he made a reasonable effort to obtain employment but was incapable of earning the same wages in any other employment; and (4) plaintiff's limited education, his past work in carpentry and construction, and his physical condition which caused him continuing pain and restricted his motion, his doctor's restrictions of no lifting over forty pounds and no repetitive bending made it futile for him to seek other employment.

Appeal by defendant from Opinion and Award entered 14 July 2008 by the North Carolina Industrial Commission. Heard in the Court of Appeals 25 March 2009.

*Law Offices of Brian Peterson, by Brian Peterson, for plaintiff-appellee.*

*Lewis & Roberts, PLLC, by Jeffrey A. Misenheimer, for defendant-appellants.*

BRYANT, Judge.

Sullbark Builders, Inc. (defendant) appeals from an Opinion and Award determining that defendant failed to meet its burden of proof to successfully assert an affirmative defense pursuant to N.C. Gen. Stat. § 97-12. We affirm.

*Facts*

Jamie Moore (plaintiff) began working for defendant in September of 2005 as a trim carpenter. Plaintiff's primary duties included

installing interior trim, installing crown and window molding, installing hardwood floors, and preparing stair railings. To perform his duties, plaintiff had to transport job-related materials around the building site. On 7 December 2005, plaintiff was assisting another employee when plaintiff fell approximately 12 feet to the bottom of a retaining wall. Plaintiff lost his balance when his ankle twisted while carrying two-by-twelve boards on his shoulders.

After his fall, plaintiff was transported to Mission Hospitals where he was diagnosed with a thoracic spine fracture, pulmonary contusion, and dehydration. Plaintiff was admitted to the hospital and submitted to a urine toxicology screening and other tests. The urine screening, testing for Ethanol and six drugs, indicated Plaintiff's urine contained cannabinoids and opiates. The toxicology report did not indicate the levels or concentrations of the detected substances.

On 14 December 2005, defendant filed a Form 61 Denial of Workers' Compensation Claim on the basis that plaintiff's claim was barred by N.C. Gen. Stat. § 97-12 because plaintiff was intoxicated at the time of the accident. Plaintiff filed a request for hearing and the matter was heard on 9 October 2006.

At the hearing, the deposition testimony of Drs. Shayne Cox Gad (Dr. Gad) and Andrew Mason (Dr. Mason) were presented. An Opinion and Award was filed 18 December 2007 concluding that defendant failed to meet its burden of proof to assert the defense of intoxication. Defendant appealed to the Full Commission (the Commission). On 14 July 2008, the Commission filed an Opinion and Award adopting the Deputy Commissioner's Award with modifications. Defendant appeals.

---

On appeal, defendant argues: (I) the Full Commission committed reversible error by finding and concluding plaintiff's claim for compensation was not barred by N.C. Gen. Stat. § 97-12; (II) it is against public policy to award compensation to plaintiff who was injured at work while intoxicated; and (III) the Full Commission erred by finding and concluding plaintiff was entitled to benefits under the Workers' Compensation Act.

*Standard of Review*

"Our review of the Commission's opinion and award is limited to determining whether competent evidence of record supports the find-

ings of fact and whether the findings of fact, in turn, support the conclusions of law." *Rose v. City of Rocky Mount*, 180 N.C. App. 392, 395, 637 S.E.2d 251, 254 (2006), *review denied*, 361 N.C. 356, 644 S.E.2d 232 (2007). "Under our Workers' Compensation Act, the Commission is the fact finding body. The Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony." *Adams v. AVX Corp.*, 349 N.C. 676, 680, 509 S.E.2d 411, 413 (1998) (citations and quotations omitted). The Commission's findings "are conclusive on appeal when supported by competent evidence, even though there is evidence that would have supported findings to the contrary." *Hollman v. City of Raleigh*, 273 N.C. 240, 245, 159 S.E.2d 874, 877 (1968).

*I*

[1] Defendant argues the Commission erred by concluding plaintiff's injuries were compensable and that N.C. Gen. Stat. § 97-12 did not bar plaintiff's claim. We disagree.

Under N.C.G.S. § 97-12,

[n]o compensation shall be payable [to an employee] if the injury or death to the employee was proximately caused by:

. . .

(2) His being under the influence of any controlled substance listed in the North Carolina Controlled Substances Act, G.S. 90-86, et seq., where such controlled substance was not by prescription by a practitioner[.]

N.C.G.S. § 97-12(2) (2007).

The statute further provides:

"Intoxication" and "under the influence" shall mean that the employee shall have consumed a sufficient quantity of intoxicating beverage or controlled substance to cause the employee to lose the normal control of his or her bodily or mental faculties, or both, to such an extent that there was an appreciable impairment of either or both of these faculties at the time of the injury.

A result consistent with "intoxication" or being "under the influence" from a blood or other medical test conducted in a manner generally acceptable to the scientific community and consistent with applicable State and federal law, if any, shall create a rebuttable presumption of impairment from the use of alcohol or a controlled substance.

**MOORE v. SULLBARK BUILDERS, INC.**

[198 N.C. App. 621 (2009)]

*Id.* "[B]eing under the influence of a controlled substance [is an] affirmative defense which place[s] the burden of proof on the employer in a claim for Workers' Compensation. [This defense] will be a proximate cause of the employee's death or injury if it is a cause in fact." *Harvey v. Raleigh Police Dep't.*, 85 N.C. App. 540, 545, 355 S.E.2d 147, 151 (1987).

The evidence presented in this case showed defendant tested positive on the date of the injury for cannabinoids, a metabolite of marijuana. The Commission made the following findings regarding plaintiff's positive test results:

13. Plaintiff had a urine toxicology screen a few hours after arriving at Mission Hospitals. The urine toxicology screen results indicated a positive result for cannabinoids and opiates. The results did not provide any numeric levels of concentrations. No confirmatory tests were performed.

. . .

17. Dr. Mason testified, "it's well recognized in the scientific community, urine tests cannot be used to establish impairment." Dr. Mason provided a list of ten quotes taken from scientific articles of forensic toxicology that support his statement that "even competently performed forensic urine tests, by themselves, do not establish impairment."

18. Dr. Gad testified that to determine impairment, the drug test had to provide the levels of concentrations in order to be able to give an opinion about impairment. Dr. Gad stated: "If the substance is metabolite for cocaine or marijuana, if you— those metabolites have minimal or very limited activity. And if you just know that you have some of it in the urine, you can't— you can't speak .to impairment." Dr. Gad's testimony shows that the test results in this case, because it only reported a positive result for marijuana, merely showed that "at some point, he used marijuana."

19. Following the urine toxicology results, the medical record in question states "positive results have not been verified by a second confirmatory procedure. Unconfirmed results should not be used for nonmedical purposes." Both toxicologists agree that the urine toxicology test in question was a test completed for medical purposes only, not valid for forensic purposes. Both toxicologists agree that a urine toxicology test that does not provide an actual

level for cannabinoid concentration does not address impairment and therefore cannot be used to show impairment.

20. Both Dr. Mason and Dr. Gad testified that the psychoactive effects of marijuana remain active for a limited period of time. Dr. Mason testified that it was usually up to four hours, while Dr. Gad testified that it was between four and six hours, depending on the dose. Even if the Plaintiff had smoked marijuana just before going to work, any psychoactive effects would have faded before the work accident.

23. The testimony of those who were with the Plaintiff on the day of the accident confirm that he did not consume marijuana at any time during the work period on the day he was injured. There is no credible evidence that on the day of plaintiff's work injury, Plaintiff was under the influence of marijuana or other controlled substances. This conclusion is consistent with the medical records. The greater weight of the evidence shows no indication that Plaintiff was impaired or intoxicated at the time of his work related accident.

24. Plaintiff's fall at work was caused by an accidental misstep of the Plaintiff and the circumstances of the work environment, where the railing he attempted to use to steady himself gave way. The greater weight of the credible and competent evidence fails to establish that the accident which caused plaintiff's injuries was proximately caused by plaintiff being under the influence of any controlled substance.

. . .

28. Based on Plaintiff's work experience and vocational and educational limitations, it would have been futile for Plaintiff to seek to obtain physically suitable employment during the time that he was under restrictions of part-time work with no lifting over twenty-five pounds.

29. Defendant did not terminate the Plaintiff as an employee. In May 2006, the owners of Defendant discussed with the Plaintiff the possibility of his returning to limited part-time work activities with Defendant. Defendant would not make accommodations for the Plaintiff to return to work with them once the Plaintiff was released to limited part-time work. Plaintiff has not performed any work for Defendant since the date of his injury, December 7, 2005.

The Commission then concluded:

2. The positive toxicology result from Mission Hospitals is not a result that would establish intoxication or being under the influence, such as to create a presumption of impairment. However, even if such a presumption of impairment were created, Plaintiff has presented sufficient competent testimony through toxicologist, Dr. Andrew P. Mason, which rebuts any such presumption. Defendants' assertion of such defenses are therefore rejected. N.C. Gen. Stat. § 97-12.

In the present case, the competent evidence before the Commission supported its conclusion that plaintiff's injury was not a result of intoxication by marijuana. As the Commission is the sole judge of the weight and credibility of conflicting evidence, it was within the Commission's discretion to determine that Dr. Mason's opinion that plaintiff's toxicology results obtained during testing at the hospital were insufficient to establish plaintiff was under the influence of marijuana was more credible than Dr. Gad's conflicting opinion. Although a rebuttable presumption of intoxication may be established as a result of a positive medical test pursuant to N.C.G.S. § 97-12, such tests must "be in a manner generally acceptable to the scientific community and consistent with applicable State and federal law." *Id.* Both Dr. Mason and Dr. Gad testified that the test performed by the hospital was not completed for forensic purposes, and should only be used for medical purposes. Also, Dr. Gad testified that the test results did not indicate the level of marijuana metabolites, only allowing the conclusion that marijuana was in plaintiff's system at the time of the injury. The test results were insufficient to establish that plaintiff was "impaired" and did not have "the normal control of his or her bodily or mental faculties, or both, to such an extent that there was an appreciable impairment of either or both of these faculties at the time of the injury." *Id.*

The Commission's conclusion that defendant failed to meet its burden of proof that plaintiff was under the influence of a controlled substance at the time of his injury was supported by competent evidence in the record. Therefore, this assignment of error is overruled.

## II

Defendant argues that awarding compensation to a plaintiff injured while under the influence of a controlled substance is against the public policy of the State, however, we decline to address this

MOORE v. SULLBARK BUILDERS, INC.

[198 N.C. App. 621 (2009)]

argument because we have determined the Commission's conclusion that plaintiff was not intoxicated at the time of his injury was supported by competent evidence in the record. Therefore, this assignment of error is overruled.

*III*

**[2]** Defendant argues the Commission erred by finding and concluding plaintiff was entitled to benefits under the Worker's Compensation Act because plaintiff did not produce any competent evidence to establish the existence of his disability. We disagree.

In order to support a conclusion of disability, the Commission must find:

1. that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in the same employment,

2. that plaintiff was incapable after his injury of earning the same wages he earned before his injury in any other employment,

3. that this individual's capacity to earn was caused by plaintiff's injury.

*Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982). The burden is on the plaintiff to prove both the existence of his disability and its degree. *Id.*

The Full Commission's Conclusion of Law number 6 states:

As a consequence of his injuries sustained in the accident of December 7, 2005, Plaintiff was unable to earn wages in the same or any other employment and was totally disabled beginning December 7, 2005 and continuing at least through the hearing date of October 9, 2006. Plaintiff is entitled to have Defendants pay him temporary total disability compensation at the rate of $357.98 per week during this period. N.C. Gen. Stat. § 97-29.

Plaintiff did not work from the date of his injury on 7 December 2005 through the date of the Full Commission hearing on 9 October 2006 with the exception of two days he unsuccessfully tried to work painting. Plaintiff has also shown that he is entitled to temporary total disability compensation during this time by satisfying the test for disability set out in *Hilliard*.

First, the burden is on the employee to show that he is unable to earn the same wages he had earned before the injury in the same

employment. *Hilliard* at 595, 290 S.E.2d at 683. The employee may meet this burden in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment, (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment, (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment, or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury. *Russell v. Lowes Prod. Distribution*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993) (internal citations omitted).

The medical evidence shows that plaintiff was physically incapable of work in any employment after his injury. When plaintiff was released from the hospital on 16 December 2005, the Discharge Instructions regarding "Returning to Work/School/Day Care" stated "when your doctor says it is okay," and plaintiff was discharged to home rest with only light activity until follow-up. Over the next several months, plaintiff continued visiting his treating physician, Dr. Lytle, and on 17 March 2006, Dr. Lytle wrote that plaintiff was "written out of work until next appointment on 5/16/06." Although Dr. Lytle noted on 22 May 2006 that plaintiff could resume work on a limited basis up to four hours per day with no lifting greater than forty pounds and no repetitive bending, on 18 July 2006, Dr. Lytle wrote that plaintiff "has been unable to return to his work, as they do not have anything for him to do on a short-term basis and also feel like he's too high risk to continue to work." Because plaintiff was not able to afford a follow-up visit, the appointment on 18 July 2006 was the last time he was treated by Dr. Lytle. At that time, Dr. Lytle's medical record established that plaintiff was incapable of work "at the current time" and that he would write plaintiff a work release to return to work "depending on how he improves." Thus, there is competent evidence to support the Full Commission's conclusion that plaintiff was physically incapable of work in any employment.

There is also competent evidence to show that plaintiff was incapable after his injury of earning the same wages he earned before his injury in any other employment. Plaintiff attempted to return to work with defendant, but because he refused to sign a release form stating that he would not file any legal action against defendant if he was injured again on the job, he did not accept the part-time position

offered. He also attempted to obtain employment with a former employer who made special accomodations for him. After working only two days, plaintiff's former employer released plaintiff because he was physically unable to do the work. Plaintiff's attempt to return to work with defendant and his unsuccessful attempt to work with his former employer show that he made a reasonable effort to obtain employment but was incapable of earning the same wages in any other employment.

Additionally, plaintiff was limited to lifting no more than forty pounds and no repetitive bending because of his injury. These restrictions hindered him from any work in carpentry, construction, or painting. This is supported by the evidence that neither defendant nor plaintiff's former employer had work to accommodate plaintiff's restrictions. Thus, plaintiff's incapacity to earn the same wages was caused by his work injury.

Plaintiff has met his burden of proving his disability because he satisfies each prong of the test for disability set out in *Hilliard*. Therefore, this conclusion of law is supported by competent evidence.

The Full Commission's conclusion of law number 7 states:

Plaintiff is entitled to have Defendants pay him temporary total disability compensation or temporary partial disability compensation until such time as Plaintiff is able to return to work at the same or greater wages than his weekly compensation rate. Therefore, unless the parties reach a private resolution of this matter, and until further agreement of the parties or order of the Commission, Defendants shall continue to pay Plaintiff total disability compensation. N.C. Gen. Stat. 97-29.

To earn his pre-injury earnings, plaintiff needed to find employment that paid him at or near $26.80 per hour and allowed him to work only four hours per day—the amount of time to which he was restricted by his doctor. Because of plaintiff's limited education, his past work in carpentry and construction, and his physical condition which caused him continuing pain and restricted his motion, his doctor's restrictions of no lifting over forty pounds and no repetitive bending made it futile for him to seek other employment. This determination of futility takes into account plaintiff's work experience, educational and vocational limitations, and his average weekly wage to conclude that plaintiff could not obtain suitable employment dur-

ing the time he was under his doctor's restrictions. Therefore, this conclusion of law is supported by competent evidence.

Because there is substantial and competent evidence to support the Full Commission's findings of fact and conclusions of law that plaintiff was entitled to benefits under the Worker's Compensation Act, this assignment of error is overruled. For the foregoing reasons, the Order and Award of the Full Commission is affirmed.

Affirmed.

Judges ELMORE and STEELMAN concur.