An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-596

NORTH CAROLINA COURT OF APPEALS

Filed: 4 February 2014

DONNA G. CLEMENTS, by and through
her Guardian of the Estate,
Kimberly Batten,

    Plaintiff

    v.

ROBERT S. CLEMENTS, the ALEXANDRA
LEE CLEMENTS IRREVOCABLE TRUST and
the KYLE DAVIS CLEMENTS
IRREVOCABLE TRUST, by and through
their Trustee MICHAEL GREEN; ALC
TRADING COMPANY; KDC TRADING
COMPANY; JAMES SCOTT CONSTRUCTION,
INC.; and MARIANGELA BARBOSA
CLEMENTS,

    Defendants.

New Hanover County
No. 10-CVS-2451

Appeal by Defendants from orders entered 13 July 2010, 27 January 2011, and 13 November 2012 by Judge W. Allen Cobb, Jr., in New Hanover County Superior Court. Heard in the Court of Appeals 8 October 2013.

    *Shipman & Wright, LLP, by W. Cory Reiss, for Plaintiff.*

    *Pennington & Smith, PLLC, by Kristy J. Jackson, Esq., for Defendants Robert S. Clements, ALC Trading Company, KDC Trading Company, James Scott Construction, Inc., and Mariangela Barbosa.*

*Vaiden P. Kendrick, Attorney at Law, by Vaiden P. Kendrick, for Defendants the Alexandra Lee Clements Irrevocable Trust and the Kyle Davis Clements Irrevocable Trust by and through their Trustee Michael Green.*

*J. Albert Clyburn, PLLC, by J. Albert Clyburn, for Charles D. Meier, Guardian ad Litem for Kyle Davis Clements and Alexandra Lee Clements.*

DILLON, Judge.

The present appeal involves, in substantial part, a dispute as to who is entitled to the proceeds from the sale of an ownership interest in Pharmakon, LLC ("Pharmakon"), a privately held company based in Illinois. Defendant Robert S. Clements purchased an interest in Pharmakon (hereinafter, the "Pharmakon shares") in early 2000 using $400,000.00 that he had received from his then-wife, Plaintiff Donna G. Clements. In 2004, shortly after his divorce from Mrs. Clements, Mr. Clements sold the Pharmakon shares for nearly $3 million and, thereafter, transferred a significant portion of the sale proceeds (hereinafter, the "Pharmakon proceeds") to entities that have also been named as Defendants in the present action.

Mrs. Clements was adjudicated incompetent in 2008, and Kimberly Batten, one of Mrs. Clements' daughters, brought the claims in the present action as Guardian of her estate. In substance, Plaintiff asserts that Mr. Clements purchased the

Pharmakon shares *on behalf of* Mrs. Clements and that, accordingly, Mrs. Clements is entitled to the Pharmakon proceeds. Plaintiff also asserts a claim – unrelated to the claim regarding the Pharmakon proceeds - to recover from Mr. Clements monies owed in connection with a $145,000.00 loan (the "$145,000.00 Loan") that Mrs. Clements allegedly made to Mr. Clements sometime prior to 2001.

In this appeal, Defendants seek review of the trial court's orders denying their motions to dismiss Plaintiff's claims entered 13 July 2010 and 27 January 2011. Further, Defendants appeal from the trial court's denial of their summary judgment motion on Plaintiff's claims; the trial court's grant of partial summary judgment for Plaintiff on her claims pertaining to the Pharmakon proceeds (but not with respect to the $145,000.00 Loan, a matter which remains pending before the trial court); and the trial court's award of damages and other relief to Plaintiff in conjunction with its grant of Plaintiff's motion for partial summary judgment. For the following reasons, we dismiss in part, and reverse and remand in part for further proceedings consistent with this opinion.

I. Factual & Procedural Background

On 13 February 1997, two days prior to their marriage, Mr. and Mrs. Clements executed a Premarital Agreement, which stated, in pertinent part, that each party's respective separate property and any appreciation thereon would remain that party's separate property throughout the marriage. The parties agree that the Premarital Agreement is valid and enforceable.

On 24 February 2000, Mrs. Clements issued a check to Mr. Clements in the amount of $400,000.00 to be drawn from a bank account that Mrs. Clements held as her separate property. Mr. Clements used these funds to purchase the Pharmakon shares.

In late 2000, Mrs. Clements began having issues with alcohol addiction and bouts with depression, and she and Mr. Clements separated for a brief period of time. On 29 December 2000, apparently as part of his reconciliation with Mrs. Clements, Mr. Clements executed two documents before a notary public. The first document concerned the $400,000.00 that Mrs. Clements had provided him to purchase the Pharmakon shares and stated as follows:

> Please let this letter serve as documentation that Donna Clements has lent to Robert S. Clements the sum of [$400,000.00] for the purpose of investment on her behalf in the Chicago based firm of Pharmakon LLC. Let it further be known that Robert S. Clements shall serve at the pleasure of Donna G. Clements as her

representative to Pharmakon, LLC.

[Signed by Robert S. Clements.]

The second document concerned the $145,000.00 Loan and stated as follows:

> Please let this letter serve as documentation that Donna G. Clements has lent [$145,000.00] to Robert S. Clements for the purpose of investment in the Construction business, James Scott Construction Inc., of which Robert S. Clements is the President of.
>
> [Signed by Robert S. Clements.]

Mr. and Mrs. Clements reconciled immediately thereafter.

Mrs. Clements continued to have mental health issues following the parties' reconciliation, and she was admitted for alcohol detoxification treatment several times in 2001.

In late 2001, Mrs. Clements purportedly executed two additional documents concerning her interest in the Pharmakon shares. In the first document, a letter to Pharmakon management dated 26 November 2001, Mrs. Clements stated the following:

> Please let this letter serve as an outline of my involvement with Pharmakon. I loaned Robert Clements funds that he was to invest at his discretion. I understand that the investment was in Pharmakon. . . . That investment was made on his decision and at his peril. I make no claims on Pharmakon; only to the original loan with the conditions that I made to him.

The second document, captioned "ACKNOWLEDGEMENT AND QUITCLAIM AGREEMENT" (the "Quitclaim Agreement") and dated 31 December 2001, was purportedly executed by Mrs. Clements in response to a redemption offer made by Pharmakon to some of its shareholders. The Quitclaim Agreement was purportedly prepared by a Pharmakon attorney and bears the apparent signatures of both Mrs. Clements and a Pharmakon representative. In the Quitclaim Agreement, Mrs. Clements describes Mr. Clements as "the record owner" of the Pharmakon shares, "having previously made a capital contribution of $400,000.00 to acquire the [shares]." She states that she had "previously claimed an interest in the [shares], but thereafter acknowledged in writing that she claims no interest in the [shares]; and that she held "no claim to the [Pharmakon shares,]" that "[Mr.] Clements [was] the sole and legal owner, and possesse[d] all right, title, and interest in and to, the [shares]"; that she otherwise "quitclaim[ed] to [Mr.] Clements any and all right, title, and/or interest or claim in [the Pharmakon shares]"; and that "in executing [the] agreement, [she was] aware of and decline[d] to accept any right she may have [had] to the redemption offer."

In February 2002, Mrs. Clements informed her financial advisor that she owned the Pharmakon shares. In February 2004,

Mrs. Clements' financial advisor listed the Pharmakon shares as assets solely owned by Mrs. Clements. However, the income tax returns jointly-filed by Mr. and Mrs. Clements reflect that only Mr. Clements received distributions made by Pharmakon with respect to the Pharmakon shares during that time period.

Mr. and Mrs. Clements separated in July 2004. On 26 August 2004, Pharmakon was sold to another company, and Mr. Clements received the Pharmakon proceeds in the amount of $2,924,500.00. Mr. Clements used the Pharmakon proceeds to, *inter alia*, make payments on a James Scott Construction business line of credit, create the KDC Trading and ALC Trading entities, establish the Kyle Davis Clements Irrevocable Trust and the Alexandra Lee Clements Irrevocable Trust for his son and daughter, respectively, and pay a debt owed on real estate known as the Camp Wright Property.

On 13 March 2007, Mr. Clements filed a complaint for absolute divorce against Mrs. Clements in New Hanover County District Court (the "District Court action"). Mrs. Clements filed an answer and counterclaim seeking equitable distribution. A judgment of absolute divorce was entered on 9 November 2007, and the court subsequently dismissed Mrs. Clements' equitable distribution claim on grounds that, in light of the Premarital

Agreement, the parties' dispute concerned only separately-owned property, and thus "there was no dispute for the family court to decide in the context of an equitable distribution action under Chapter 50 . . . ."

On 25 February 2008, Mrs. Clements was adjudicated incompetent by the New Hanover County Clerk of Court. Mr. Clements subsequently married Defendant Mariangela Barbosa Clements and, on 24 September 2008, conveyed the Camp Wright Property to himself and Ms. Barbosa as tenants by the entireties.

On 24 May 2010, Plaintiff filed her complaint in the present action in New Hanover County Superior Court. With respect to the Pharmakon proceeds, Plaintiff asserted claims against Mr. Clements for conversion, replevin, breach of fiduciary duty, constructive fraud, and breach of contract. Plaintiff's complaint also requested a declaratory judgment as to Plaintiff's rights in the Pharmakon proceeds; imposition of a constructive trust for the Pharmakon proceeds, much of which, as previously stated, had been transferred by Mr. Clements to several of the other named Defendants; and an injunction prohibiting Mr. Clements "from transferring or otherwise disposing of assets which had "been purchased, acquired, or

funded with [Mrs. Clements'] separate property . . . ." Further, the complaint sought repayment of the $145,000.00 Loan.[1]

On 8 June 2010, Defendants Clements, ALC Trading, KDC Trading, and James Scott Construction filed motions to dismiss Plaintiff's claims. The trial court denied Defendants' motions by order entered 13 July 2010.

On 3 August 2010, Defendants again moved to dismiss Plaintiff's claims, asserting, *inter alia*, that the statute of limitations barred Plaintiff's claims; that Plaintiff's claim for breach of contract regarding the Pharmakon proceeds related to the Premarital Agreement "over which the Superior Court ha[d] no jurisdiction"; and that Plaintiff's claims seeking equitable relief were barred by the equitable defenses of laches and estoppel. Following a hearing on the matter, the trial court entered an order on 27 January 2011 denying Defendants' motion to dismiss.

On 24 July 2012, Plaintiff moved for partial summary judgment against Defendants with respect to her claims regarding the Pharmakon proceeds; however, her motion did not encompass her claim for repayment of the $145,000.00 Loan. Defendants

---

[1] The complaint was subsequently amended to add a claim for fraudulent conveyance relating to Mr. Clements' conveyance of the Camp Wright Property into an estate by the entireties with his current wife, Mariangela Clements.

countered with their own motion for summary judgment with respect to all of Plaintiff's claims. Both sides introduced competing expert testimony concerning Mrs. Clements' mental capacity in late 2001, when she purportedly executed the two documents concerning her interest in the Pharmakon shares. Defendants submitted the affidavit of their expert Dr. James E. Bellard, which states his opinion, in part, that "[t]he claim or suggestion that [Mrs. Clements] was similarly incompetent in 2001 is simply not supported by the medical record." Plaintiff, in turn, submitted the affidavit of her expert, Dr. George P. Corvin, in which he criticizes Dr. Bellard's methods as "not sufficiently valid and reliable," since Dr. Bellard had formed his opinion as to Mrs. Clements' competency "without conducting a personal evaluation or examination of Ms. Clements or seeking to interview those who knew her during the relevant period." Also in his affidavit, Dr. Corvin opined that Mrs. Clements "had frontal lobe damage that permanently changed her from her baseline ability [and that those] changes directly impaired her ability in the latter half of 2001 and beyond to manage her own affairs and to communicate important decisions concerning her property[.]"

The summary judgment motions came on for hearing on 7 August 2012. On 13 November 2012, the trial court entered a declaratory judgment and order granting Plaintiff's motion for partial summary judgment and denying Defendants' motion for summary judgment. The order sets forth 132 findings of fact, 148 conclusions of law, and 102 footnotes, concluding, *inter alia*, that Dr. Corvin's opinion concerning Mrs. Clements' competency in 2001 was admissible, but that Dr. Bellard's opinion was inadmissible on grounds that it was not formed based on sufficiently reliable methods; that there was no genuine issue that Mrs. Clements lacked the requisite mental capacity beginning in 2000 (when the Pharmakon shares were first acquired) to make a gift or enter into a contract that, therefore, any agreement to convey the Pharmakon shares was void; and that, consequently, Plaintiff was the owner of the Pharmakon shares and thus entitled to the Pharmakon proceeds. The trial court ordered that the trusts and accounts funded with the Pharmakon proceeds be disgorged and that all property obtained with the Pharmakon proceeds – for instance, the Camp Wright property – be sold in order to satisfy Defendants' obligation to Mrs. Clements' estate.

On 16 January 2013, the parties executed a memorandum of consent judgment and order, in which they agreed to stay execution of the trial court's summary judgment order and order on damages, as to all Defendants other than Mr. Clements, and to liquidate the accounts held by Defendants ALC Trading, KLC Trading, Kyle Davis Clements Irrevocable Trust, and Alexandra Lee Clements Irrevocable Trust and transfer the proceeds to the New Hanover County Clerk of Superior Court pending resolution of this appeal.

From the trial court's orders entered 13 July 2010, 27 January 2011, and 13 November 2012, Defendants now appeal.

## II. Jurisdiction

Our review of the record reveals that Plaintiff's claim with respect to the $145,000.00 Loan remains pending before the trial court. Accordingly, all of the orders from which Defendants presently appeal are interlocutory in nature. *Veazey v. City of Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950). "Generally, an interlocutory order is not immediately appealable." *Builders Mut. Ins. Co. v. Meeting Street Builders, LLC*, __ N.C. App. __, __, 736 S.E.2d 197, 199 (2012) (citing N.C. Gen. Stat. § 1A-1, Rule 54(b) (2011)). "An exception to this general rule lies, however, where the order appealed from

'affects a substantial right.'" *Id.* (citing N.C. Gen. Stat. § 1-277(a) (2011); N.C. Gen. Stat. § 7A-27(d)(1) (2011)). "[T]his Court has previously held that entry of summary judgment for a monetary sum against one of multiple defendants affects a substantial right" and is thus "immediately appealable under N.C. Gen. Stat. §§ 1-277 and 7A-27." *Brown v. Cavit Sciences, Inc.*, __ N.C. App. __, __, 749 S.E.2d 904, 907 (2013) (citing *Equitable Leasing Corp. v. Myers*, 46 N.C. App. 162, 172, 265 S.E.2d 240, 247 (1980)).

Here, the trial court's 13 November 2012 orders granted Plaintiff's motion for partial summary judgment and entered a judgment for a monetary sum against Defendants. Execution of the judgment has not been stayed with respect to Mr. Clements. Moreover, the accounts of some of the other Defendants have been liquidated and paid over to the court. We hold under these circumstances that the trial court's grant of partial summary judgment in Plaintiff's favor affects a substantial right and is thus immediately appealable. *Myers*, 46 N.C. App. at 172, 265 S.E.2d at 247.

However, Defendants' challenges to the trial court's 13 July 2010 and 27 January 2011 orders denying their motions to dismiss Plaintiff's claims and the trial court's order denying

their motion for summary judgment are not properly before this Court at the present time. The trial court did not certify these interlocutory orders for immediate appellate review pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b); and, upon review of Defendants' contentions, we conclude that Defendants have not met their burden in demonstrating that these orders affect a substantial right.

## III. Analysis

Defendants contend that the trial court erred in granting Plaintiff's motion for partial summary judgment. We agree.

A motion for summary judgment is appropriately granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A–1, Rule 56(c) (2011). "The burden is on the moving party to show the absence of any genuine issue of fact and his entitlement to judgment as a matter of law." *In re Will of Lamanski*, 149 N.C. App. 647, 649, 561 S.E.2d 537, 539 (2002). "If the moving party has established the lack of a genuine issue of material fact, then the burden shifts to the non-moving party to present his own forecast of evidence to show

that a genuine issue of material fact does exist." *Williams v. Smith*, 149 N.C. App. 855, 857, 561 S.E.2d 921, 923 (2002).

In its order granting Plaintiff's motion for partial summary judgment, the trial court determined that Mrs. Clements was the owner of the Pharmakon shares when the shares were sold in August 2004, reasoning that the evidence established as a matter of law that Mrs. Clements lacked the mental capacity to make a $400,000.00 gift to Mr. Clements at the time she issued him the check for that amount, or, alternatively, lacked such capacity at the time she signed the Quitclaim Agreement in late 2001.

We believe, however, that there remain genuine issues of material fact such that Plaintiff was not entitled to judgment as a matter of law, including a genuine issue concerning Mrs. Clements' mental capacity during the relevant time periods.

Regarding Mrs. Clements' mental capacity, the trial court concluded that Mrs. Clements "did not possess the required mental capacity to gift, to execute contracts, or comprehend the effect of a gift on her estate (in February 2000, November 2001, or December 2001[2])[,]" and, therefore, she could not have

---

[2] These dates represent when the Pharmakon shares were purchased in Mr. Clements' name; when Mrs. Clements wrote the letter to Pharmakon management stating that she claimed no interest in the

relinquished ownership of the $400,000.00 or the Pharmakon shares purchased with those funds. The trial court based this conclusion essentially upon its determination that testimony offered by Plaintiff's expert witness, Dr. Corvin, constituted the only *admissible* expert opinion concerning Mrs. Clements' competency – which was that Mrs. Clements lacked the requisite mental capacity to make a gift as early as late 2001. Though Defendants attempted to introduce Dr. Bellard's countering expert opinion, the trial court concluded that Dr. Bellard's methodology in forming his opinion was unreliable and thus inadmissible since, unlike Dr. Corvin, Dr. Bellard had not actually conducted a face-to-face interview with Mrs. Clements or with anyone who had had contact with Mrs. Clements in the early 2000's.

Even assuming *arguendo* that the trial court did not err in excluding Dr. Bellard's opinion, we believe that the court erred in concluding that the other evidence was insufficient to raise a genuine issue concerning Mrs. Clements' capacity. For instance, in his affidavit, Dr. Corvin expressed no opinion on Mrs. Clements' capacity in 2000 – when Mrs. Clements signed the

---

Pharmakon shares, but that she had merely loaned $400,000.00 to Mr. Clements; and when Mrs. Clements executed the Quitclaim Agreement with Pharmakon.

$400,000.00 check to Mr. Clements and the Pharmakon shares were purchased in his name - but only stated his opinion that she lacked sufficient capacity as of late 2001. Moreover, Dr. Corvin's opinion was not dispositive on the issue of Mrs. Clements' capacity during that time simply because it was the only expert testimony admitted, as our Supreme Court has specifically held that "[u]ncontradicted expert testimony [concerning a person's mental state] is not binding on the trier of fact. Questions of credibility and the weight to be accorded the evidence remains in the province of the finder of fact." *Scott v.* Scott, 336 N.C. 284, 291, 442 S.E.2d 493, 497 (1994).

As the trial court correctly states in its order, "the measure of capacity is the ability to understand the nature of the act in which he is engaged and its scope and effect, or its nature and consequences, not that he should be able to act wisely or discreetly, nor to drive a good bargain, but that he should be in such possession of his faculties as to enable him to know at least what he is doing," *Ridings v. Ridings*, 55 N.C. App. 630, 633, 286 S.E.2d 614, 617 (1982). In *Ridings*, this Court stated that there is a presumption of mental capacity to contract and that the testimony of an expert witness to the contrary "would be sufficient *to raise a genuine issue* of [the

party's] ability to grasp the nature and consequences of his actions." *Id.* (emphasis added). Thus, while expert testimony may be sufficient to raise a genuine issue with respect to an individual's lack of capacity, such testimony does not necessarily establish this lack of capacity *as a matter of law*. *Id.* In this present case, there is other evidence from which a jury could infer that Mrs. Clements understood the nature of her acts during the relevant time periods. For instance, Mrs. Clements' medical records from 2001, when she was in alcohol rehabilitation treatment, describe her as "cognitively capable" and having "cognition [which] appear[ed] intact." Further, it could be inferred from Mrs. Clements' November 2001 letter to Pharmakon – in which she stated that the risk (and reward) regarding the success of Pharmakon was being borne entirely by her husband and that she merely had merely made a loan to him – that she understood the nature of her acts. Additionally, there is deposition testimony from individuals who knew Mrs. Clements and evidence regarding business transactions which she had engaged in which a jury could infer that she understood the nature of her business transactions during the relevant time periods. Accordingly, we hold that the trial court erred in concluding, as a matter of law, that Mrs. Clements lacked the

requisite mental capacity to make a gift or a loan in late 2001 because there is a genuine issue as to whether she understood the nature and consequences of her actions at that time. *See*, *e.g.*, *McDevitt v. Chandler*, 241 N.C. 677, 680, 86 S.E.2d 438, 440 (1955) (holding that the question of capacity to make a deed is a question of law based on certain facts such as whether the grantor understood the nature and consequences of his actions).[3]

Moreover, assuming that the issue of Mrs. Clements' capacity is resolved in Defendants' favor, there is evidence from which a jury could find facts supporting the conclusion that Mr. Clements was the owner of the Pharmakon shares. For instance, there is evidence from which it could be inferred that Mrs. Clements gifted $400,000.00 to Mr. Clements or subsequently gifted the Pharmakon shares to him. Specifically, the evidence indicates that Mrs. Clements issued the check to Mr. Clements in early 2000 and that the proceeds therefrom were used to purchase the Pharmakon shares in his name only. Our Supreme Court has held that where the owner or purchaser of shares of stock has

---

[3] Factual determinations concerning Mrs. Clements' abilities during various time periods in order to make conclusions on her capacity and legal competency at these times may be important in determining the owner of the Pharmakon shares as of 2004 and also resolving certain issues raised in Defendants' motions to dismiss, e.g., the tolling of the applicable statutes of limitations and the availability of the defenses of equitable laches and estoppel.

the certificate issued in the name of another, and so registered on the books of the corporation, the transaction is regarded as a gift completed by constructive delivery. *Buffaloe v. Barnes*, 226 N.C. 313, 318, 38 S.E.2d 222, 225 (1946). Regarding the trial court's conclusion that Mrs. Clements "did not intend to relinquish all her control over the funds[,]" the court's order does not reflect any conduct on Mrs. Clements' part at the time that she gave her husband the $400,000.00 check indicating that her intent was something other than to make a gift to her husband. Rather, the trial court's order points to statements and actions made by Mrs. Clements and her attorney at later times to conclude that there was no genuine issue with respect to whether she intended to continue exercising control over the $400,000.00 and the subsequently purchased Pharmakon shares at the time she issued the check to Mr. Clements. Therefore, we believe that there is evidence from which a jury could infer that, *at the time* that she wrote the check to Mr. Clements and the Pharmakon shares were purchased in his name alone, she intended to confer a gift upon her husband, and that she may have changed her mind regarding the gift only after the fact. *See Courts v. Annie Penn Mem'l Hosp.*, 111 N.C. App. 134, 141, 431 S.E.2d 864, 868 (1993) (holding that once a gift of shares

of stock is completed, the law will not recognize any "after-the-fact" conditions placed on the transaction by the donor).

Additionally, as the trial court found in its order, there was evidence presented that Mr. Clements – and not Mrs. Clements – reported the passive income derived from the Pharmakon shares for tax purposes, evidence from which a jury could infer that Mrs. Clements viewed Mr. Clements as the owner of the Pharmakon shares. Further, her handwritten November 2001 letter to Pharmakon is evidence from which a jury could infer that she intended the $400,000.00 check to be a loan – rather than a gift – to Mr. Clements, that she assumed no risk in the fortunes of Pharmakon but that it was Mr. Clements who had made the investment "at his own peril," and, therefore, any claim that Mrs. Clements might have against Mr. Clements would have been for repayment of a $400,000.00 loan. We believe that this same inference could be drawn from the December 2001 Quitclaim Agreement, in which Mrs. Clements acknowledges that Mr. Clements was the record owner of the Pharmakon shares, that it was Mr. Clements who made the capital contribution of $400,000.00 to acquire the shares, that she claimed no interest in the shares, and that she quitclaimed any interest she might otherwise have in the shares to Mr. Clements.

In sum, we believe that there remain a number of factual issues which must be resolved by a jury before any conclusion can be drawn as to whether Mr. Clements or Mrs. Clements was the owner of the Pharmakon shares. Many of these same factual issues – such as Mrs. Clements' competency - may also be relevant to resolve other issues, such as Defendants' defenses based on the statute of limitations and equitable laches.

Although we have already held that the trial court erred in granting Plaintiff's motion for partial summary judgment, we nevertheless choose to address the trial court's exclusion of Dr. Bellard's testimony since this issue is likely to come up in a trial of this matter. It is well established that a trial court's ruling on the admissibility of expert opinion testimony is reviewable for abuse of discretion. *State v. Ward*, 364 N.C. 133, 139, 694 S.E.2d 738, 742 (2010) (citing *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 458, 597 S.E.2d 674, 686 (2004)). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988).

Here, both Dr. Colvin and Dr. Bellard performed "retrospective evaluations" of Mrs. Clements in order to form

their respective opinions concerning her competency – or lack thereof – during the early 2000's. However, only Dr. Bellard's testimony was excluded as "not sufficiently reliable." The trial court made its decision to admit Dr. Corvin's testimony but exclude Dr. Bellard's testimony, in essence, on grounds that (1) Dr. Corvin had met face-to-face with Mrs. Clements, though not until 2008, and interviewed others who knew her in the early 2000's; and (2) Dr. Corvin believed that Dr. Bellard's methods were unreliable. Although these bases for distinction may bear upon the weight accorded to the testimony by a jury, we find them to be without merit to base a decision to *exclude* an opinion from the consideration of a jury in this particular case. Our Courts have explicitly rejected the notion that an expert witness must personally interview an individual in order to offer an opinion on that individual's mental state, *State v. Daniels*, 337 N.C. 243, 271, 446 S.E.2d 298, 315 (1994); *Harvey v. Raleigh Police Dep't*, 85 N.C. App. 540, 547, 355 S.E.2d 147, 152 (1987); and we clearly cannot deem expert testimony properly excludible solely because an expert tendered by the opposing party denies its credibility.

Careful scrutiny of the testimony offered by Dr. Corvin and Dr. Bellard further convinces us of the arbitrary nature of the

court's decision to exclude only that of the latter. In support of his affidavit, Dr. Bellard submitted an extensively detailed report, which documents Mrs. Clements' medical history and reflects the methodology that he used in arriving at his conclusions concerning Mrs. Clements' mental state. Dr. Corvin, on the other hand, provided deposition testimony without an accompanying report and without reviewing all of Plaintiff's available medical records. Further, as stated above, Dr. Corvin's personal interviews, which evidently served as the trial court's primary basis for elevating the reliability of Dr. Corvin's methods over those of Dr. Bellard, consisted of interviewing Mrs. Clements, who was legally incompetent, and Plaintiff's two daughters, who have a stake in these proceedings as Mrs. Clements' heirs-at-law. Under these circumstances, we believe that the trial court abused its discretion in excluding Dr. Bellard's opinion from consideration.

## III. Conclusion

For the foregoing reasons, we dismiss Defendants' appeals from the trial court's 13 July 2010 and 27 January 2011 orders denying their motions to dismiss and Defendants' appeal from the trial court's order denying their motion for summary judgment;

and we reverse and remand the trial court's order granting Plaintiff's motion for partial summary judgment.

DISMISSED IN PART; REVERSED AND REMANDED IN PART.

Judges McGEE and McCULLOUGH concur.

Report per Rule 30(e).